UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PETER AND STEPHANIE NEWSON,<br><br>        Plaintiffs,<br><br>     vs.<br><br>COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER, MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC., BANKERS ALLIANCE INC., JULIE WHITESIDE, and DOES 1-20, inclusive,<br><br>        Defendants. | Case No:  C 09-5288 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTRYWIDE HOME LOAN, INC.'S MOTION TO DISMISS, TO EXPUNGE LIS PENDENS AND TO STRIKE**<br><br>Docket 24 |

Plaintiffs, Dr .Peter Newsom ("Newsom") and Stepanie Newsom (collectively "Plaintiffs"), allege that they were defrauded by their lender, mortgage broker and others in connection with the refinancing of their home in Woodside, California.  The Second Amended Complaint ("SAC") alleges nine claims for relief against defendants, Countrywide Home Loans, Inc. dba America's Wholesale Lender ("Countrywide"), Mortgage Electronic Registrations Systems, Inc. ("MERS"), Bankers Alliance Inc. ("Bankers Alliance") and Julie Whiteside ("Whiteside").   Only Countrywide has been served with the SAC.

The parties are presently before the Court on Countrywide's Motion to Dismiss Plaintiffs' Second Amended Complaint, Motion to Strike, and Motion to Expunge Lis Pendens. Having read and considered the papers submitted in connection with this matter, and being fully informed, the Court hereby:  (1) GRANTS IN PART and DENIES IN PART the motion to dismiss; (2) GRANTS IN PART and DENIES IN PART the motion to strike; and (3) DENIES the motion to expunge lis pendens.  Pursuant to Federal Rule of Civil Procedure 78(b), the Court adjudicates the instant matter without oral argument.

I.      BACKGROUND

   A.    FACTUAL SUMMARY

        Plaintiffs are the equitable owners of a residence located at 150 Brookwood Road, Woodside, California, which they purchased in 2002.  SAC ¶ 1; Def.'s Request for Judicial Notice ("RJN") Ex. N.  In July 2006, Plaintiffs retained a mortgage broker, Bankers Alliance, to assist them with refinancing an existing mortgage on their property.  SAC ¶ 11.  Whiteside, ostensibly on behalf of Bankers Alliance, informed Plaintiffs that she would obtain a "no cost, no charge" loan for them.  Id. ¶ 12.  Plaintiffs allegedly were led to believe that they would receive a 6% interest rate on a new first mortgage and an 8% interest rate on the second.  Id. ¶ 26.  On August 23, 2006, Whiteside obtained financial and other information from Plaintiffs, including the amount of their monthly income, and on their behalf, submitted a loan application for a 30-year fixed rate loan in the amount of $2.15 million at an interest rate of 6.75%.  Id. ¶ 14.  Unbeknownst to Plaintiffs, Whiteside allegedly inflated the amount of Plaintiffs' monthly income from $30,000 to $47,000.  Id. ¶ 16.[1]

        On September 11, 2006, Newsom went to the title company to sign closing documents.  Id. ¶ 27.  While walking into the title company, Newsom was on the telephone with Whiteside, who informed him that the interest rate on the first mortgage, in fact, would be 6.75% the first mortgage and 12% on the second.  Id.  Newsom nonetheless proceeded to sign the loan papers, though Whiteside allegedly told him "not to worry because it would be only for a couple of months because they could refinance."  Id. ¶ 27.  Newsom claims that the ramifications of these changes were not disclosed to him and that "he did not fully understand the implications in the 50% increase in his interest rate at the last minute."  Id.  After the closing, Newsom received another call from Whiteside, who told him that the documents that he had executed were "incorrect" and needed to be re-signed.  Id. ¶ 28.  On September 13, 2006, Whiteside's mother

---

[1] In the SAC, Plaintiffs use the term "Plaintiff" and "Plaintiffs" interchangeably.  Thus, it is unclear from the complaint which Plaintiff's information was utilized for the loan application.

went to Newsom's office for a "second closing ceremony."  Id.  On the same date, Plaintiffs received final Truth in Lending Disclosure Statements for both loans.  Id. ¶ 21.

According to Plaintiffs, the terms of the notes were different than what was previously represented to them by Whiteside.  Id. ¶ 28.  After receiving a billing statement, Plaintiffs allegedly realized that "just how materially worse the loans were" and "immediately tried to get out of them."  Id. ¶ 31.  Plaintiffs contacted the lender, Countrywide, which refused to rescind.  Id.  As a result, Plaintiffs sought to refinance their mortgages through another lender. Id. ¶ 32.  First Federal Bank of California approved Plaintiffs for a first mortgage at 4% interest, provided that Countrywide would agree to refinance the second mortgage at 8% interest, subordinate to the first mortgage.  Id.  In April 2007, Countrywide rejected Plaintiffs' application to refinance his second mortgage because it was no longer originating second mortgages.  Id. ¶ 33.  Plaintiffs were unable to refinance their property, and were compelled to make monthly payments in the amount of $16,500.  Id. ¶ 36.

In Spring 2008, Newsom was diagnosed with cancer and was hospitalized.  Id. ¶ 37.  In June 2008, Plaintiffs applied for a loan modification from Countrywide, which was denied on December 25, 2008.  Id. ¶ 38.  However, on August 29, 2009, Countrywide offered to modify the terms of the first mortgage.  Id. ¶¶ 39-40.  On December 30, 2009, Plaintiffs sent the requested documents to Countrywide via overnight delivery.  Id. ¶ 40.

## B.    PROCEDURAL HISTORY

In the meantime, on July 10, 2009, Plaintiffs filed the instant action against Countrywide and Bankers Alliance in San Mateo County Superior Court, but served neither party.  Notice of Removal ¶ 1, Docket 1.  On September 9, 2009, Plaintiffs filed an Amended Complaint against Countrywide, Recontrust Company, N.A., Bankers Alliance, John Whiteside and Old Republic Title Company.  Id. ¶ 2.  On November 6, 2009, Countrywide removed the action to this Court on the ground that Plaintiffs had alleged federal claims under the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA").  Id. ¶ 5. Plaintiff and Countrywide subsequently stipulated to the filing of a Second Amended Complaint ("SAC"), which is the operative pleading before the Court.  Docket 12, 13.

On January 11, 2010, Plaintiffs filed a SAC alleging alleges nine causes of action for: (1) cancellation of a voidable contract under California Revenue and Tax Code sections 23304.1 and 23305a; (2) breach of the implied covenant of good faith and fair dealing; (3) rescission under TILA; (4) unjust enrichment; (5) violation of California Business and Professions Code section 17200 (also known as the Unfair Competition Law ("UCL"); (6) fraudulent misrepresentation and fraudulent nondisclosure; (7) quiet title; (8) reformation; and (9) breach of fiduciary duty.  Countrywide is named as a defendant in all claims *except* the first claim under California Revenue and Tax Code, which is alleged against MERS only.

Countrywide now moves to dismiss all claims, to expunge the lis pendens that Plaintiffs recorded on their property, and to strike Plaintiffs' prayer for punitive and treble damages. Accompanying the motion is a Request for Judicial Notice ("RJN") in which Countrywide has attached what are purported to be copies of various loan documents and disclosures signed by Plaintiffs.  Plaintiffs have filed an opposition to the motion as well as an objection to the RJN. The matter has been fully briefed and is now ripe for determination.

## II.    LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Id.  The pleadings must "give the defendant fair notice of what ... the claim is and the grounds upon which it rests."  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks omitted).  "[A] Plaintiffs' obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), a court must take the allegations as true and construe them in the light most favorable to plaintiff.  See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993). Where the plaintiff is pro se, the Court must liberally construe his pleadings.  Balistreri, 901

F.2d at 699.  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009).  "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."  Id. at 1950.  Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]"  Id. at 1951 (quoting Twombly, 550 U.S. at 557).  If the complaint is dismissed, the plaintiff generally should be afforded leave to amend unless it is clear the complaint cannot be saved by amendment.  See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

## III.    DISCUSSION

### A.    CALIFORNIA REVENUE AND TAX CODE SECTIONS 23304 AND 23305A

Plaintiffs' first cause of action alleges that MERS violated California Revenue and Tax Code sections 23304.1 and 23305a.  SAC ¶¶ 43-48.  Although this claim is alleged against MERS only, only Countrywide seeks its dismissal.  Def.'s Mot. at 6-8.  However, Countrywide lacks standing to seek the dismissal of a claim in which it is not named as a defendant.  See Deeds v. Bayer, 2007 WL 1232230 at *6 (D. Nev., April 26, 2007) ("the court concludes that the defendants' counter-motion to dismiss Bayer as a defendant should be stricken because defendants lack standing to bring a motion to dismiss on behalf of a party whom it does not represent.").  Therefore, Countrywide's motion to dismiss the first claim against MERS is DENIED.

### B.    BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiffs' second cause of action is for breach of the implied covenant of good faith and fair dealing, which provides that no party to a contract may do anything that would deprive another party of the benefits of the contract.  Foley v. Interactive Data Corp., 47 Cal.3d 654, 683-684 (1988).  "This covenant is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose."  Wolf v. Walt Disney Pictures & Television, 162 Cal.App.4th 1107, 1120 (2008) (internal quotations marks omitted). "The implied covenant of good faith and fair

1  dealing rests upon the existence of some specific contractual obligation" and there "is no

2  obligation to deal fairly or in good faith absent an existing contract."  Racine & Laramie, Ltd.

3  v. Dep't of Parks & Recreation, 11 Cal.App.4th 1026, 1031-32 (1992) (internal quotation

4  marks omitted).

5       Plaintiffs allege that "Countrywide and Bankers Alliance willfully breached their

6  implied covenant of good faith and fair dealing with Plaintiffs when Countrywide and Bankers

7  Alliance willfully withheld numerous disclosures."  SAC ¶ 53.  As an initial matter, Plaintiffs

8  fail to identify which "disclosures" are at issue or what particular contract, if any, forms the

9  basis of their implied covenant claim.  The lack of such allegations contravenes the Supreme

10  Court's mandate that the pleadings "give the defendant fair notice of what ... the claim is and

11  the grounds upon which it rests."  Erickson, 551 U.S. at 93 (internal quotation marks omitted).

12  Nevertheless, if the contract underlying the instant claim is the trust deed, the alleged

13  withholding of disclosures appears to have occurred *prior to* its execution.  Pre-contract

14  conduct, however, cannot support a claim for breach of the implied covenant of good faith and

15  fair dealing.  See McClain v. Octagon Plaza, LLC, 159 Cal.App.4th 784, 799 (2008) (alleged

16  misconduct during contract negotiations failed to state a claim for breach of the implied

17  covenant of good faith and fair dealing).

18       To the extent that Plaintiffs' implied covenant claim is predicated on disclosures

19  required by TILA, it is preempted pursuant to regulations issued under the auspices of the

20  Homeowners' Loan Act of 1933 ("HOLA").  "HOLA created what is now the OTS [Office of

21  Thrift Supervision] for the purpose of administering the statute, and it provided the OTS with

22  'plenary authority' to promulgate regulations involving the operation of federal savings

23  associations."  State Farm Bank v. Reardon, 539 F.3d 336, 342 (6th Cir. 2008).  The OTS has

24  authority to issue broad regulations preempting state law.  Fid. Fed. Sav. & Loan, Ass'n v. de

25  la Cuesta, 458 U.S. 141, 160 (1982).  In particular, 12 C.F.R. § 560.2 provides that federal law

26  "occupies the entire field of lending regulation for federal savings associations."  The effect of

27  this express preemption clause is to virtually occupy the entire field of lending-related activities

28

1   of qualifying lending associations, and to leave no room for conflicting state laws.  <u>Silvas v.</u>

2   <u>E*Trade Mortgage Corp.</u>, 514 F.3d 1001, 1005-1006 (9th Cir. 2008).

3          To clarify the scope of HOLA's preemption, section 560.2(b) sets forth a non-

4   exhaustive list of illustrative examples of the types of state laws that are expressly preempted,

5   which include, inter alia, terms of credit, loan-related fees, servicing fees, disclosure and

6   advertising, loan processing, loan origination, and servicing of mortgages.  12 C.F.R.

7   § 560.2(b).  A claim or state statute may be preempted by HOLA on an "as applied" or case-

8   specific basis.  <u>See</u> <u>Silva</u>, 514 F.3d at 1005-1006.  To determine whether a state law claim is

9   preempted, as applied, "the first step will be to determine whether the type of law in question is

10  listed in paragraph (b)."  <u>Id.</u>  If so, the state law is preempted.  <u>Id.</u>[2]

11         Among the types of laws subject to preemption under section 560.2(b) are those

12  "purporting to impose requirements regarding: … [¶] (9) Disclosure and advertising, including

13  laws requiring specific statements, information, or other content to be included in credit

14  application forms, credit solicitations, billing statements, credit contracts, or other credit-

15  related documents and laws requiring creditors to supply copies of credit reports to borrowers

16  or applicants[.]"  12 C.F.R. § 560.2(b)(9).  Thus, to the extent that the "numerous disclosures"

17  referenced in the SAC are disclosures required by TILA, Plaintiffs' claim is preempted.

18  <u>See</u> <u>Curcio v. Wachovia Mortg. Corp.</u>, 2009 WL 3320499 at *6 (S.D. Cal., Oct. 14, 2009)

19  (granting motion to dismiss claim for breach of the implied covenant of good faith and fair

20  dealing based on the ground that it was preempted under 12 C.F.R. § 560.2(b)(9)).

21         Perhaps recognizing the infirmity of their claim, Plaintiffs fail to respond directly to

22  Countrywide's arguments, and instead, assert that their implied covenant claim is based on

23  "events surrounding Plaintiffs' attempted refinance of the second note after Countrywide

24  wrongfully denied their request to rescind it."  Pls.' Opp'n at 6 (citing SAC ¶¶ 31-36).

25  However, that contention is different from what Plaintiffs alleged in their SAC as the factual

26  _____

27         [2] Alternatively, under section 560.2(c), state laws of general applicability, such as tort, contract, and real property laws, may be subject to preemption if their enforcement would impact federal savings associations in areas listed in § 560.2(b).  <u>Id.</u> at 1006; 12 C.F.R. §

28  560.2(c).

basis of their implied covenant claim, which only refers to the alleged withholding of disclosures.  See SAC ¶ 53.  But even if those "events" were expressly alleged as part of the claim, such a theory of liability suffers from the flaw in that it relies on conduct that is not tethered to a contract.  To the extent that Plaintiffs are complaining that Countrywide acted in bad faith by refusing to give them a lower interest rate, they must demonstrate that such implied obligation emanates from an actual contract.  Given these deficiencies, Plaintiffs' second claim for breach of the implied covenant of good faith and fair dealing is DISMISSED with leave to amend.

## C.    TILA

Plaintiffs' third cause of action seeks rescission under TILA.  SAC ¶¶ 56-61.  "Congress enacted TILA 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'"  Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1118 (9th Cir. 2009) (quoting 15 U.S.C. § 1601).  A TILA violation may give rise to a claim for rescission and/or damages.  15 U.S.C. §§ 1635, 1640.

In credit transactions involving the borrower's principle dwelling, the borrower has the right to rescind the transaction up to midnight of the third business day following the consummation of a loan transaction.  15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a).  The creditor must notify the borrower of this right by providing "two copies of the notice of the right to rescind to each consumer entitled to rescind[.]"  12 C.F.R. § 226.23(b)(1); 15 U.S.C. § 1635(a).  If the lender fails to provide a notice of the right to rescind or the disclosures required by TILA, the time limit for rescission is extended to "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first,…"  15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); see Miguel v. Country Funding Corp., 309 F.3d 1161, 1163 (9th Cir. 2002).

Countrywide argues that Plaintiffs' request to rescind the second note is time-barred because they did not request rescission within three business days after having received their

TILA disclosures and Notices of Right Cancel.  Def.'s Mot. at 10.  As support, Countrywide requests that the Court take judicial notice of copies of notices allegedly signed by Plaintiffs, which Countrywide argues *proves* Plaintiffs' actual receipt of the same.  Id.; RJN Exs. A-K. The request to take judicial notice is denied.  A court may consider documents that are not attached to the pleadings if those documents are referenced therein and their authenticity "has not been questioned."  No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.,  20 F.3d 920, 925 n.2 (9th Cir. 2003).  In this case, however, Plaintiffs takes exception to the authenticity of the documents presented by Countrywide, and dispute that they received copies of *completed* forms bearing their signature.  Pl.'s Obj. to Def.'s RJN at 3.  As such, the Court cannot, in connection with the instant motion, resolve the question of whether Plaintiffs, in fact, were provided with the completed notices, as alleged by Countrywide.  That determination is more appropriately made by way of a motion for summary judgment.  See Olivera v. Am. Home Mortg. Serv., Inc., --- F.Supp.2d ---, ---, 2010 WL 334848 at *4 (N.D. Cal., Jan. 22, 2010) (declining to take judicial notice of alleged Notice of Right to Cancel proffered by defendants where plaintiffs challenged its authenticity) (Armstrong, J.); accord Woods v. Greenpoint Mortg. Funding, Inc., 2010 WL 1729711 at *2 (E.D. Cal., April 28, 2010); Burch v. GMAC Mortg., LLC, 2010 WL 934088 at *2 (N.D. Cal. March 15, 2010) (following Olivera) (Chesney, J.).

Equally unpersuasive is Countrywide's one-sentence long argument that "Plaintiffs' rescission rights were limited from the outset because Plaintiffs were refinancing existing loans with [Countrywide]."  Def.'s Mot. at 10.  Countrywide relies on a provision of Regulation Z, which states:

> The right to rescind does not apply to … [¶] … refinancing or consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling.  *The right of rescission shall apply, however, to the extent the new amount financed exceeds the unpaid principal balance*, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation.

12 C.F.R. § 223(f)(2) (emphasis added).  Although the SAC avers that Plaintiffs were refinancing an existing loan with Countrywide, it appears that the new amount financed

exceeded their existing debt.  <u>See</u> SAC ¶¶ 19, 22.  If so, the exemption set forth in Regulation Z is inapplicable.  However, because neither party has adequately briefed the issue, the Court declines to resolve the applicability of the regulation at this juncture.  <u>See</u> <u>Indep. Towers of Wash. v. Wash.</u>, 350 F.3d 925, 929 (9th Cir. 2003) (argument deemed forfeited if the party provides "little if any analysis to assist the court in evaluating its legal challenge").

Finally, Countrywide contends that Plaintiffs' claim for actual and statutory damages is time-barred.  Def.'s Mot. at 9-10.  The basis of this argument is somewhat curious since Plaintiffs are *not* seeking damages under TILA; rather, they are seeking rescission only.  SAC ¶ 61.  Indeed, the third claim for relief is styled as "Rescission under TILA."  SAC at 10:24-25.  In sum, the Court finds that none of Countrywide's arguments warrant dismissal of Plaintiffs' claim for rescission under TILA at this stage of the proceedings, and as such, its motion to dismiss Plaintiffs' third claim for relief is DENIED.

### D.    UNJUST ENRICHMENT

Plaintiffs' fourth cause of action is for unjust enrichment.  No such cause of action is recognized under California law.  "The phrase 'Unjust Enrichment' does not describe a theory of recovery, but an effect:  the result of a failure to make restitution under circumstances where it is equitable to do so."  <u>Lauriedale Assocs., Ltd. v. Wilson</u>, 7 Cal.App.4th 1439, 1448 (1992).  "Unjust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself."  <u>Melchior v. New Line Prods., Inc.</u>,106 Cal.App.4th 779, 784 (2003).  In other words, a claim for unjust enrichment "is synonymous with [a request for] restitution[.]"  <u>See</u> <u>McBride v. Boughton</u>, 123 Cal.App.4th 379, 387 (2004).  Plaintiffs do not dispute that there is no independent cause of action under California law for unjust enrichment, but contend that they have a right to seek restitution under their TILA claim.  Pl.'s Opp'n at 15.  Whether or not that is accurate is inapposite; even if Plaintiffs are correct, that still would not establish that a legal basis exists for stating an independent claim for unjust enrichment.  Accordingly, Plaintiffs' claim for unjust enrichment is DISMISSED, without leave to amend.

**E.    UNFAIR COMPETITION LAW**

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Each prong of the UCL is a separate and distinct theory of liability."  Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009).  The heightened pleading requirements of Rule 9(b) are applicable to UCL claims.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) ("we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").  Here, Plaintiffs allege violations of each of these three prongs.

**1.    Unlawful Practice**

"[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder."  Farmers Ins. Exch. v. Super. Court, 2 Cal.4th 377, 383 (1992) (quotations and citations omitted); Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  The violation of almost any federal, state, or local law may serve as the basis for a UCL claim.  Saunders v. Superior Court, 27 Cal.App.4th 832, 838-39 (1994).  Where a plaintiff cannot state a claim under the "borrowed" law, he or she cannot state a UCL claim either.  See Silvas, 514 F.3d at 1007 n.3 (holding that time-barred TILA claim could not be recast under the UCL, which has a longer limitations period); Ingels v. Westwood One Broad. Servs., Inc., 129 Cal.App.4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law.") (internal quotation marks omitted).

Plaintiffs allege that Countrywide engaged in an unlawful business practice by imposing "hidden fees" and "excessive fees" in violation of RESPA.  SAC ¶¶ 71-76.  In their motion to dismiss, Countrywide argues that this aspect of Plaintiffs' UCL claim is preempted by HOLA.  As discussed above, to determine whether a state law cause of action is preempted, the Court assesses whether the allegations in support of such claim fall within the purview of 12 C.F.R. § 560.2(b).  See Silvas, 514 F.3d at 1005.  In this case, the challenged practice of charging

improper fees falls within the scope of section 560.2(b)(5), which governs "[l]oan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees[.]"  12 C.F.R. § 560.2(b)(5).  "Because the UCL § 17200 claim, as applied, is a type of state law listed in paragraph (b) … the preemption analysis ends there."  Silvas, 514 F.3d at 1006 (holding that HOLA preempted UCL claim based on allegations that defendant wrongfully refused to return lock-in fees); Munoz v. Fin. Freedom Senior Funding Corp., 567 F. Supp. 2d 1156, 1164 (C.D. Cal. 2008) (finding UCL claim based on lender's fees in reverse mortgage transaction in violation of RESPA was preempted by HOLA).  The Court therefore finds that Plaintiffs' unlawful practices claim is preempted.

The question remains whether Plaintiff should be allowed leave to amend to allege an unlawful practices claim based on a violation of TILA.  Though no TILA violations are alleged as the basis of Plaintiffs' unlawful practices claim, Plaintiffs argue in their opposition that a TILA violation can support such a claim.  Pls.' Opp'n at 15-16.[3]  In particular, Plaintiffs point to allegations in the SAC that Countrywide violated TILA by failing to provide them with properly completed notices of their right to cancel and by including excessive charges in the TILA disclosure statement.  SAC ¶¶ 57, 59.  Such claims, however, fall within the scope of section 560.2(b)(5), which governs loan-related fees, as well as section 560.2(b)(9), which governs lender disclosures.  As such, a UCL claim grounded on violations of TILA also would be preempted.  See Nava v. VirtualBank, 2008 WL 2873406 at *7 (E.D. Cal., July 16, 2008) (UCL based on TILA disclosure violation was preempted under 12 C.F.R. § 560.2(b)(9)).  Plaintiffs' UCL claim based on unlawful practices is therefore DISMISSED, without leave to amend.

### 2.      Unfair Practice

An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to

---

[3] Countrywide asserts that Plaintiffs' UCL is based on violation of RESPA *and* TILA.  However, the SAC clearly states that such claim is based on RESPA.  This is evident from the subheading, which states:  "Violation of Law:  RESPA."  SAC at 12:23.

consumers." <u>McDonald v. Coldwell Banker</u>, 543 F.3d 498, 506 (9th Cir. 2008); <u>Glenn K. Jackson Inc. v. Roe</u>, 273 F.3d 1192, 1203 (9th Cir. 2001). Alternatively, an act is "unfair" under the UCL "if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could have reasonably avoided." <u>Berryman v. Merit Prop. Mgmt., Inc.</u>, 152 Cal.App.4th 1544, 1555 (2006). In <u>Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal.4th 163 (1999), the California Supreme Court cautioned against an overly broad interpretation of "unfair" in the context of the UCL, noting that "[v]ague references to 'public policy,' for example, provide little real guidance." <u>Id.</u> at 185. Thus, "where a claim of an unfair act or practice is predicated on public policy, … <u>Cel-Tech</u> … require[s] that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." <u>Gregory v. Albertson's, Inc.</u>, 104 Cal.App.4th 845, 854 (2002).

In their SAC, Plaintiffs incorporate by reference certain paragraphs of their pleading to support their claim that Countrywide engaged in an unfair business practice. SAC ¶ 69 (citing ¶¶ 12, 13, 15-17, 20, 22, 24-28, 32, 35 and 38). These paragraphs, in turn, allege that Countrywide misrepresented facts, failed to comply with TILA, and refused to rescind or modify their mortgages. These allegations are preempted by HOLA for the same reasons set forth above; to wit, the challenged conduct is governed by 12 C.F.R. § 560.2(b). To the extent that Plaintiffs are complaining about Countrywide's origination and the specific terms of the subject loans, such claim also is preempted under section 560.2(b)(4) and (10), which apply specifically to that conduct. <u>See</u> <u>Bassett v. Ruggles</u>, 2010 WL 1525554 at *21 (E.D. Cal., April 15, 2010) (claim that mortgagees by they "were tricked into signing documents for a loan that was misrepresented to them and was above par" preempted by HOLA) (citing 12 C.F.R. § 560.2(b)(4) and (10)). Because this deficiency cannot be cured by amendment, Plaintiffs' unfair practices claim is DISMISSED, without leave to amend.

### 3. Fraudulent Practice

"The fraudulent business practice prong of the UCL has been understood to be distinct from common law fraud." <u>In re Tobacco II Cases</u>, 46 Cal.4th 298, 312, 93 Cal.Rptr.3d 559,

207 P.3d 20 (2009).  Conduct is considered "fraudulent" under the UCL if the conduct is "likely to deceive."  <u>Morgan v. AT & T Wireless Servs., Inc.</u>, 177 Cal.App.4th 1235, 1254 (2009).  Although a UCL claim need not plead the elements of common law fraudulent deception, it must allege the existence of a duty to disclose.  <u>Berryman v. Merit Prop. Mgmt., Inc.</u>, 152 Cal.App.4th 1544, 1557 (2007).  "Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL."  <u>Id.</u>  Plaintiff must also allege reliance.  <u>In re Tobacco II Cases</u>, 46 Cal.4th at 328; <u>Cattie v. Wal-Mart Stores, Inc.</u>, 504 F.Supp.2d 939, 947-49 (S.D. Cal. 2007).  Though "fraudulent" has a different meaning under the UCL than in the case of common law fraud, a complaint alleging "fraudulent conduct" still must meet the particularity requirements of Rule 9(b).  <u>See</u> <u>Kearns</u>, 567 F.3d at 1125.

Here, the "fraudulent practices" underlying Plaintiffs' UCL claim are alleged as: (1) failing to disclose all material loan terms and the inclusion of false, unfair and unconscionable terms; (2) underwriting the loan without due diligence; (3) failing to disclose the yield spread premium paid to the mortgage loan officer; and (4) including loan terms that Plaintiffs could not realistically meet.  SAC ¶¶ 77-80.  Setting aside Plaintiffs' failure to plead these fraud-based allegations with the requisite specificity, it is readily apparent that they are preempted by HOLA for the same reasons stated above.  <u>See</u> <u>Conder v. Home Sav. of Am.</u>, 680 F. Supp. 2d 1168, 1175 (C.D. Cal. 2010) (dismissing claim that lender fraudulent omitted loan terms were preempted by HOLA); <u>Newbeck v. Wash. Mut. Bank</u>, 2010 WL 291821 at *4 (N.D. Cal. Jan. 19, 2010) ("To the extent that Plaintiffs' UCL claims here rest on allegations of non-disclosure and the terms of [plaintiff]'s loan, they are preempted by federal law.") (Wilken, J.).  As alleged, Plaintiffs have failed to state claim under the fraudulent practice prong of the UCL.  Accordingly, Plaintiffs' UCL claim based on fraudulent practices is DISMISSED, without leave to amend.

## F. FRAUDULENT MISREPRESENTATION AND FRAUDULENT NON-DISCLOSURE

To state a claim for fraudulent misrepresentation, a party must allege facts to support the following elements: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damages.  <u>Kearns</u>, 567 F.3d at 1126.  The elements of a claim

1   for fraudulent concealment are: "1) suppression of a material fact; 2) by one who is bound to

2   disclose it ...; 3) with intent to deceive a person unaware of the concealed fact and who would

3   not have acted had he known of the fact."  Melanson v. United Air Lines, Inc., 931 F.2d 558,

4   563 (9th Cir. 1991).  Fraud claims and claims that "sound in fraud" or are "grounded in fraud"

5   must be pled with particularity.  Kearns, 567 F.3d at 1125.  This means that the complaint must

6   allege "the who, what, when, where, and how" of the alleged fraudulent conduct, Cooper v.

7   Pickett, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a]

8   statement or omission complained of was false and misleading," In re GlenFed, Inc. Sec. Litig.,

9   42 F.3d 1541, 1548 (9th Cir. 1994) (en banc); see Fecht v. Price Co., 70 F.3d 1078, 1082 (9th

10  Cir. 1995).  Where multiple defendants are involved, the plaintiff also must identify the role of

11  each defendant in the alleged fraudulent scheme.  See Swartz v. KPMG LLP, 476 F.3d 756,

12  764-65 (9th Cir. 2007).

13          Plaintiffs base their fraud claim on a number of allegations scattered throughout the

14  SAC.  See SAC ¶ 82.  The SAC alleges that Plaintiffs "would not have taken the subject loans

15  but for the representations of defendants broker, agent and lender, as pled more specifically at

16  paragraphs 12, 15, 16, 18, 21, 24, 26, 27 and throughout the amended complaint."  Id.  The

17  crux of these allegations is that Whiteside and/or Countrywide misrepresented the fees

18  associated with originating the loan, provided false income information to qualify Plaintiffs for

19  a loan they could not afford, failed to provide disclosures and charged higher interest rates than

20  previously represented.  However, all of these allegations fall within the scope of the OTS's

21  preemption regulations.  See 12 C.F.R. § 560.2(b)(5) (loan related fees, including service fees);

22  id. § 560.2(b)(9) (disclosures); id. § 560.2(b)(10) ("processing, origination [and/or] servicing"

23  of a mortgage").  "Because Plaintiffs' fraud claim, as applied, bears on lending activities

24  expressly contemplated by § 560.2(b), it is preempted."  Amaral v. Wachovia Mortg. Corp., --

25  F. Supp. 2d ---, ---, 2010 WL 618282 at *11 (E.D. Cal., Feb. 7, 2010) (granting motion to

26  dismiss fraud cause of action which alleged that the lender "made material false representations

27  to plaintiffs that their refinance loan was approved by Wachovia, that all loan documents had

28

1    been processed, and that plaintiff had incurred an obligation to make monthly payments to

2    Wachovia to repay the refinance loan.").

3         Even if Plaintiffs' fraud claim were not preempted, it independently fails to state a claim

4    for relief.  First, the SAC alleges that "throughout July and August of 2006" Whiteside

5    represented to Plaintiffs that they would receive a "no cost, no charge" loan.  SAC ¶ 12.

6    Plaintiffs do not allege where or when Whiteside allegedly made this statement, what was

7    meant by "no cost, no charge" or that they relied on her representation.  Nor do Plaintiffs

8    specify Countrywide's alleged role with respect to these statements.  Though Plaintiffs

9    insinuate that Whiteside worked for company that was a division of Countrywide, they also

10   allege that she worked for Defendant Banker's Alliance, a licensed real estate broker.  SAC

11   ¶¶ 3, 4, 15.[4]  Thus, even if Whiteside's conducted were pled with the requisite particularity,

12   Plaintiffs have failed to allege facts demonstrating that such conduct can be imputed to

13   Countrywide.

14        Second, Plaintiffs allege in their loan application Whiteside misstated Plaintiffs' income

15   as $47,000 per month when it was only $30,000 per month.  SAC ¶ 16.  However, because this

16   alleged misstatement was made to the lender and not Plaintiffs, they cannot establish reliance.

17   See Yazdanpanah v. Sacramento Valley Mortg. Group, 2009 WL 4573381 at *3 (N.D. Cal.,

18   Dec. 1, 2009) (granting motion to dismiss in mortgage fraud case where plaintiff failed to

19   allege actual reliance) (Armstrong, J.).

20        Third, Plaintiffs allege that Countrywide failed to properly disclose material information

21   to them.  Specifically, they aver that the "total settlement charges to the borrower" listed in the

22   final closing statement is $4,762.03 more than in the estimated closing statement.  SAC ¶ 18-

23   19.  In addition, they complain that estimated closing statement indicated that there would be

24   no mortgage broker fee, whereas the final consolidated closing statement revealed that broker

25

26        [4] Countrywide cites what is purported to be a copy of Plaintiffs' loan application as an
     exhibit to its RJN as evidence that Whiteside was employed by Banker's Trust, not
27   Countrywide or one of its divisions.  Def.'s Mot. at 15.  Assuming arguendo that the document
     is properly the subject of a request for judicial notice, the Court notes that the document does
28   not establish the identity of Whiteside's employer.

fees in the amount of $5,375.00 and "broker points" in the amount of $37,000.  Id. ¶¶ 19, 24.  To the extent that Plaintiffs are attempting to allege that Countrywide concealed these fees, no facts are alleged establishing that such concealment was intentional.  Nor are there any facts demonstrating that had such information been disclosed, Plaintiffs would not have entered into the loan transactions.[5]  Tellingly, Plaintiffs fail to address this aspect of their claim in their opposition.

Fourth, Plaintiffs aver that they received no initial TILA disclosure statements and that the copies of the notices of right to cancel were defective.  Id. ¶¶ 20-22.  As set forth above, a state law claim premised on violations of TILA is preempted.  In addition, Plaintiffs impermissibly are attempting to revive an otherwise time-barred TILA claim under the guise of as fraud claim.  A claim for damages under TILA is subject to a one-year statute of limitations, See 15 U.S.C. § 1640(e), while a fraud claim under California law is subject to a three-year limitations period, Cal.Code.Civ.P. § 338(d).  The limitations period commenced on September 13, 2006, when Plaintiffs received the allegedly defective disclosure notices, SAC ¶ 22, but they did not commence this action until almost three years later on July 9, 2009.  As such, Plaintiffs cannot pursue an otherwise time-barred TILA claim by recasting it as a state law claim which carries a longer statute of limitations, as in the case of fraud.  See Silvas, 514 F.3d at 1007 n.3 (precluding UCL claim based upon a time-barred TILA claim).

Fifth, Plaintiffs complain that Whiteside had told them that the interest rate on the first mortgage would be 6% and 8% on the second, but that as Newsom was walking into the title company on September 11, 2006 to sign loan documents, he "was told via telephone … that the interest rate would be increased to 6.75% on the first and 12% on the second …."  SAC ¶¶ 26-27.[6]  To the extent that the allegedly last-minute change in the interest rate was fraudulent,

---

[5] Plaintiffs' generic allegations of reliance, SAC ¶ 82, fail to pass muster under Rule 9(b)'s particularity requirements. See United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp., 660 F. Supp. 2d 1163, 1189 (C.D. Cal. 2009).

[6] As to the interest rate on the first mortgage, it is unclear how the 6.75% interest rate could come as any surprise to Plaintiffs given their allegation that in August 2006, Whiteside was applying for such a loan at that interest rate on their behalf.  SAC ¶ 14.

Plaintiffs admittedly cannot demonstrate reliance because they were advised of the rate difference *before* Newsom signed the closing documents.  Plaintiffs also ignore their allegations that all of the documents had to be re-signed two days later due to unspecified problems with the documentation.  Id. ¶ 27.  As such, Plaintiffs had a further opportunity to change their mind about entering into loans at higher interest rates than they were originally promised.[7]

Finally, Plaintiffs allege that they were defrauded by Whiteside, who told them "not to worry" about the paying the higher interest rates "because it would only be for a couple of months because they could refinance."  SAC ¶ 27.  As discussed above, this representation is attributed to Whiteside, not Countrywide.  Absent facts demonstrating Countrywide's liability for fraudulent representations or omissions by Whiteside, Plaintiffs' fraud claim must fail.  Having failed to allege any viable grounds to support their fraud claim, Plaintiffs sixth cause of action must be DISMISSED.  Because conduct forming the basis of Plaintiffs' fraud claim is prempted by HOLA, amendment would be futile and leave to amend is thus denied.[8]

### G.   QUIET TITLE

Plaintiffs' seventh cause of action is to quiet title.  SAC ¶¶ 85-92.  The purpose of a quiet title action is to determine "all conflicting claims to the property in controversy and to decree to each such interest or estate therein as he may be entitled to."  Newman v. Cornelius, 3 Cal. App. 3d 279, 284 (1970). California Code of Civil Procedure § 761.020 provides that a complaint for quiet title "shall be verified" and shall include the following:

---

[7] The SAC also alleges that Whiteside failed to disclose to Plaintiffs the impact the increased interest rates would have on their annual percentage rate or closing costs.  SAC ¶ 27.  Even if Plaintiffs could attribute such conduct to Countrywide, any claim based on the adequacy of the lender's disclosures is preempted.  See 12 C.F.R. § 560.2(b)(9).  Moreover, this information is disclosed on the TILA disclosure statement, which Plaintiffs allege they received on September 13, 2006, the same date they re-executed their loan documents.  Id. ¶ 28.

[8] This does not foreclose Plaintiffs from seeking leave to amend under Rule 15(a) in the event they are able to allege non-preempted conduct as the basis of their claim.  However, Plaintiffs make no argument in their opposition that such facts exists, and as such, leave to amend is denied at this juncture.

A description of the property that is the subject of the action.... In the case of real property, the description shall include both its legal description and its street address or common designation, if any.

The title of the plaintiff as to which a determination under this chapter is sought and the basis of the title....

The adverse claims to the title of the plaintiff against which a determination is sought.

The date as of which the determination is sought. If the determination is sought as of a date other than the date the complaint is filed, the complaint shall include a statement of the reasons why a determination as of that date is sought.

A prayer for the determination of the title of the plaintiff against the adverse claims.

Countrywide does not dispute that Plaintiffs have met the above requirements.  Instead, Countrywide assert that dismissal is required because that they "have failed to tender the loan proceeds."  Def.'s Mot. at 16.  There is no requirement that Plaintiffs actually tender the proceeds at the pleading stage in order to proceed with their claims.  In paragraph 61 of the SAC, Plaintiffs have alleged their willingness to tender in the event the loan is rescinded, which is all that is required at this juncture.  See Morris v. Bank of Am., 2010 WL 761318 at *4-5 (N.D. Cal., March 3, 2010) (Armstrong, J.).  Countrywide's motion to dismiss Plaintiffs' claim for quiet title is DENIED.

**H.   REFORMATION**

Countrywide moves to dismiss Plaintiffs' eighth cause of action for reformation on the ground that Plaintiffs have failed to allege facts sufficient to demonstrate mutual mistake or unconscionability.   Def.'s Mot. at 17-18.  Plaintiffs make no attempt to refute Countrywide's arguments, which the Court construes as a statement of non-opposition to the dismissal of such claim.  Given their lack of opposition, Plaintiffs' claim for reformation is DISMISSED without leave to amend.

**I.   BREACH OF FIDUCIARY DUTY**

The elements of a breach of fiduciary duty claim are (1) existence of a fiduciary relationship; (2) breach of the fiduciary duty; and (3) damage proximately caused by that

breach.  Roberts v. Lomanto, 112 Cal.App.4th 1553, 1562 (2003).  Although California law imposes a fiduciary duty on a mortgage broker, no such duty is imposed on a lender.  <u>Price v. Wells Fargo Bank</u>, 213 Cal.App.3d 465, 476 (1989); <u>see also</u> <u>Nymark v. Heart Fed. Savings & Loan Assn.</u>, 231 Cal.App.3d 1089, 1096 (1991) (lender owes no fiduciary duty to the borrower).

Plaintiffs tacitly concede that Countrywide, as a lender, does not owe them any particular fiduciary duties.  Nonetheless, they allege that Whiteside was acting as an agent for Countrywide.  SAC ¶ 111-112.  "A lender may ... be secondarily liable through the actions of a mortgage broker, who has a fiduciary duty to its borrower-client, but only if there is an agency relationship between the lender and the broker." <u>Gonzalez v. HomeQ Serv.</u>, 2010 WL 289303 at *13 (E.D. Cal., Jan.15, 2010).  As discussed above, however, Plaintiff has not alleged facts sufficient to establish an agency relationship between Whiteside and Countrywide.  Therefore, Countrywide's motion to dismiss Plaintiffs' claim for breach of fiduciary duty is GRANTED, with leave to amend.

### J.   LIS PENDENS

A lis pendens is a recorded document giving constructive notice that an action has been filed affecting title to or right to possession of the real property described in the notice.  <u>Kirkeby v. Superior Court</u>, 33 Cal.4th 642, 647 (2004).  At any time after notice of pendency of action has been recorded, any party, or any nonparty with an interest in the real property affected thereby, may apply to the court in which the action is pending to expunge the notice.  Cal.Code Civ. Proc. § 405.30.  Countrywide contends that the Court should expunge the lis pendens that Plaintiffs recorded on their property on the ground that the SAC lacks any viable claims.  Def.'s Mot. at 19-20.  However, since at least some of Plaintiffs' claims survive Countrywide's motion to dismiss, it is premature to expunge the lis pendens.  Accordingly, the Countrywide's motion to expunge lis pendens is DENIED.

### K.   MOTION TO STRIKE

Countrywide moves to strike Plaintiffs' prayer for punitive damages and treble damages.  Although the Court has dismissed Plaintiffs' fraud claim, they nonetheless may

1   recover punitive damages for breach of fiduciary duty.  See Am. Airlines, Inc. v. Sheppard,

2   Mullin, Richter & Hampton, 96 Cal.App.4th 1017, 1051 (2002).  Although the Court has

3   dismissed Plaintiffs' breach of fiduciary duty claim, it has allowed them leave to amend.  Thus,

4   it is premature to conclude whether or not Plaintiff should be allowed to include a prayer for

5   punitive damages.  With regard to the request for treble damages, however, Plaintiffs have

6   failed to identify any legal basis for such prayer and has tacitly conceded the validity of

7   Countrywide's arguments by failing to respond to them.  Thus, Countrywide's motion to strike

8   Plaintiffs' is DENIED with respect to Plaintiffs' prayer for punitive damages and GRANTED

9   as to their prayer for treble damages.

10  **IV.    CONCLUSION**

11          IT IS HEREBY ORDERED THAT:

12          1.      Countrywide's motion to dismiss is:

13                  a.      DENIED as to Plaintiffs' first claim for cancellation of voidable contract;

14                  b.      GRANTED as to Plaintiffs' second claim for breach of the implied

15  covenant of good faith and fair dealing, with leave to amend;

16                  c.      DENIED as to Plaintiffs' third claim for rescission under TILA;

17                  d.      GRANTED as to Plaintiffs' fourth claim for unjust enrichment, without

18  leave to amend;

19                  e.      GRANTED as to Plaintiffs' fifth claim for violation of the UCL, without

20  leave to amend.

21                  f.      GRANTED as to Plaintiffs' sixth claim for fraudulent misrepresentation

22  and fraudulent nondisclosure, without leave to amend;

23                  g.      DENIED as to Plaintiffs' seventh claim for quiet title;

24                  h.      GRANTED as to Plaintiffs' eighth claim for reformation, without leave

25  to amend; and

26                  i.      GRANTED as to Plaintiffs' ninth claim for breach of fiduciary duty, with

27  leave to amend.

28          2.      Countrywide's motion to expunge lis pendens is DENIED.

3.      Countrywide's motion to strike is DENIED as to Plaintiffs' prayer for punitive damage and GRANTED as to their prayer for treble damages.

4.      The hearing on the instant motion scheduled for May 18, 2010 is VACATED.

5.      Plaintiffs shall file their Third Amended Complaint consistent with this Order within seven (7) days of the date this Order is filed.  Should Plaintiffs fail to timely amend, Countrywide shall file its responsive pleading to the Second Amended Complaint within fourteen (14) days of the date this Order is filed.  However, if Plaintiffs timely amend their pleading, Countrywide shall respond consistent with the Federal Rules of Civil Procedure.

6.      The parties shall appear for a telephonic Case Management Conference scheduled for **June 23, 2010 at 2:30 p.m.**  The parties shall **meet and confer** prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

7.      This Order terminates Docket 24.

IT IS SO ORDERED.

Dated: May 17, 2010

SAUNDRA BROWN ARMSTRONG
United States District Judge

- 22 -