UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PETER AND STEPHANIE NEWSON,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>COUNTRYWIDE HOME LOANS, INC. DBA AMERICA'S WHOLESALE LENDER, MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC., BANKERS ALLIANCE INC., JULIE WHITESIDE, and DOES 1-20, inclusive,<br><br>                    Defendants. | Case No:  C 09-5288 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT**<br><br>Docket 60 |

Plaintiffs, Dr. Peter Newsom and Stepanie Newsom (collectively "Plaintiffs") allege that they were defrauded by their lender, Countrywide Home Loans, Inc. dba America's Wholesale Lender ("Countrywide"), and others, in connection with the refinancing in 2006 of their home in Woodside, California.  The Fourth Amended Complaint ("FAC") is brought against Countrywide, Mortgage Electronic Registrations Systems, Inc. ("MERS"), Bankers Alliance Inc. ("Bankers Alliance") and Julie Whiteside ("Whiteside"). The parties are presently before the Court on Countrywide and MERS' Motion to Dismiss Plaintiffs' Fourth Amended Complaint.  Having read and considered the papers submitted in connection with this matter, and being fully informed, the Court hereby GRANTS IN PART and DENIES IN PART the motion, as set forth below.  Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court adjudicates the instant matter without oral argument.

# I. BACKGROUND

## A. FACTUAL SUMMARY

Plaintiffs are the equitable owners of a residence located at 150 Brookwood Road, Woodside, California, which they purchased in 2002.  Fourth Am. Compl. ("FAC") ¶ 1, Dkt. 59.  In July 2006, Plaintiffs retained a mortgage broker, Bankers Alliance, to assist them with refinancing two existing Countrywide mortgages on their property.  Id. ¶ 11.  Plaintiffs worked with Whiteside, who represented that she was affiliated with Banker's Alliance.  Id. ¶ 15.  However, the applications completed by Plaintiffs identify Whiteside as an employee of America's Wholesale Lender, a division of Countrywide.  Id.

Whiteside informed Plaintiffs that she would obtain a "no cost, no charge" loan for them.  Id. ¶ 12.  Plaintiffs allegedly were led to believe that they would receive a 6% interest rate on a new first mortgage and an 8% interest rate on the second.  Id. ¶ 26.  On August 23, 2006, Whiteside obtained financial and other information from Plaintiffs, including the amount of their monthly income, and on their behalf, submitted a loan application for a 30-year fixed rate loan in the amount of $2.15 million at an interest rate of 6.75%.  Id. ¶ 14.  Unbeknownst to Plaintiffs, Whiteside allegedly inflated the amount of Plaintiffs' monthly income from $30,000 to $47,000.  Id. ¶ 16.

On September 11, 2006, Dr. Newsom went to the title company to sign closing documents.  Id. ¶ 27.  As Dr. Newsom was entering the title company office to sign loan documents, Whiteside informed him by telephone that the interest rate on the first mortgage, in fact, would be 6.75% the first mortgage and 12% on the second, as opposed to 6% and 8%, respectively, per her prior representations.  Id.  Newsom nonetheless proceeded to sign the loan papers, though Whiteside allegedly told him "not to worry because it would be only for a couple of months because they could refinance."  Id. ¶ 27.  Newsom claims that the ramifications of these changes were not disclosed to him and that "he did not fully understand the implications in the 50% increase in his interest rate at the last minute."  Id.  After the closing, Dr. Newsom received another call from Whiteside, who told him that the documents that he had executed were "incorrect" and needed to be re-

signed.  Id. ¶ 28.  On September 13, 2006, Whiteside's mother went to Newsom's office for a "second closing ceremony."  Id.  On the same date, Plaintiffs received final Truth in Lending Disclosure Statements for both loans.  Id. ¶ 21.

According to Plaintiffs, the terms of the notes were different than what were previously represented to them by Whiteside.  Id. ¶ 28.  After receiving a billing statement, Plaintiffs allegedly realized that "just how materially worse the loans were" and "immediately tried to get out of them."  Id. ¶ 31.  Plaintiffs contacted the lender, Countrywide, which refused to rescind.  Id.  As a result, Plaintiffs sought to refinance their mortgages through another lender.  Id. ¶ 32.  They contacted First Federal Bank of California ("First Federal Bank"), which approved Plaintiffs for a first mortgage at 4% interest, provided that Countrywide would agree to refinance the second mortgage at 8% interest, subordinate to the first mortgage.  Id.  In April 2007, Countrywide rejected Plaintiffs' application to refinance their second mortgage because it was no longer originating second mortgages.  Id. ¶ 33.  Plaintiffs were unable to refinance their property, and were compelled to make monthly payments in the amount of $16,500.  Id. ¶ 36.

In Spring 2008, Dr. Newsom was diagnosed with cancer and was hospitalized.  Id. ¶ 37.  In June 2008, Plaintiffs applied for a loan modification from Countrywide, which was denied on December 25, 2008.  Id. ¶ 38.  However, on August 29, 2009, Countrywide offered to modify the terms of the first mortgage.  Id. ¶¶ 39-40.  On December 30, 2009, Plaintiffs sent the requested documents to Countrywide via overnight delivery.  Id. ¶ 41.

### B.  PROCEDURAL HISTORY

In the meantime, on July 10, 2009, Plaintiffs filed the instant action against Countrywide and Bankers Alliance in San Mateo County Superior Court, but served neither party.  Notice of Removal ¶ 1, Docket 1.  On September 9, 2009, Plaintiffs filed an Amended Complaint against Countrywide, Recontrust Company, N.A., Bankers Alliance, John Whiteside and Old Republic Title Company.  Id. ¶ 2.  On November 6, 2009, Countrywide removed the action to this Court on the ground that Plaintiffs had alleged federal claims under the Truth in Lending Act ("TILA") and the Real Estate Settlement

1  Procedures Act ("RESPA").  Id. ¶ 5.  Plaintiff and Countrywide subsequently stipulated to
2  the filing of a Second Amended Complaint ("SAC"), which Plaintiffs filed on January 11,
3  2010.
4        Countrywide filed a motion to dismiss, which the Court granted in part and denied in
5  part on May 19, 2010.  Dkt. 36.  In that ruling, the Court found that a number of Plaintiffs'
6  claims were preempted by the Homeowners' Loan Act of 1933 ("HOLA"), which applies
7  to federal savings associations.  Dkt. 36 at 6.  Plaintiffs filed a Third Amended Complaint
8  on May 26, 2010.  Dkt. 38.  However, Plaintiffs subsequently discovered that Countrywide
9  was not a federal savings association (and thus not subject to HOLA), and therefore, moved
10 for leave to file a motion for reconsideration.  Dkt. 41 at 2.  In response, the Court directed
11 Plaintiff to file a motion to file a Fourth Amended Complaint ("FAC") in order to reinstate
12 the claims that the Court had previously concluded were preempted by HOLA.  Dkt. 52.
13 After Countrywide, now joined by MERS, filed a statement of non-opposition, the Court
14 granted Plaintiffs leave to file a FAC in order to reinstate the claims which the Court had
15 previously concluded were preempted by HOLA.  Dkt. 57, 58.  Plaintiffs filed their FAC on
16 August 30, 2010.  Dkt. 59.[1]
17       Countrywide and MERS (collectively "Defendants," unless specified otherwise)
18 have now moved to dismiss the FAC with respect to the:  (1) first cause of action for
19 cancellation of a voidable contract under California Revenue and Tax Code sections
20 23304.1 and 23305a; (2) second cause of action for breach of the implied covenant of good
21 faith and fair dealing; (3) fifth cause of action for fraudulent misrepresentation and
22 fraudulent non-disclosure; and (4) sixth cause of action for violation of California Business
23 and Professions Code section 17200 (also known as the Unfair Competition Law ("UCL").
24 The Court addresses these claims, in turn.

---

[1] The Court has *serious concerns* regarding the fact that Countrywide argued in its first motion to dismiss that Plaintiffs' claims were preempted by HOLA when Countrywide knew, or should have known, that it was not a federal savings association regulated by the Office of Thrift Supervision.  By pressing what has proven to be a legally untenable defense, Countrywide has caused this Court and Plaintiffs to expend time and resources on unnecessary law and motion matters.

## II. LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). To survive a motion to dismiss, the plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The pleadings must "give the defendant fair notice of what ... the claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (internal quotation marks omitted).

When considering a motion to dismiss under Rule 12(b)(6), a court must take the allegations as true and construe them in the light most favorable to plaintiff. See Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949-50 (2009). "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Id. at 1950. Those facts must be sufficient to push the claims "across the line from conceivable to plausible[.]" Id. at 1951 (quoting Twombly, 550 U.S. at 557). "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## III. DISCUSSION

### A. CALIFORNIA REVENUE AND TAX CODE SECTIONS 23304 AND 23305A

Plaintiffs' first cause of action, which is brought against MERS only, seeks to void the Deeds of Trust on the grounds that MERS allegedly violated California Revenue and Tax Code sections 23304.1 and 23305a. FAC ¶ 48; Defs.' Mot. at 8-9. Defendants contend that this claim is improper because MERS is not a party to any contract with

Plaintiffs.  Plaintiffs do not dispute this nor do they oppose dismissal of this cause of action.  Accordingly, Defendants' motion to dismiss Plaintiffs' first cause of action against MERS is granted, and said claim is dismissed with prejudice.

### B. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The implied covenant of good faith and fair dealing provides that no party to a contract may do anything that would deprive another party of the benefits of the contract. Foley v. Interactive Data Corp., 47 Cal.3d 654, 683-684 (1988).  "This covenant is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." Wolf v. Walt Disney Pictures & Television, 162 Cal.App.4th 1107, 1120 (2008) (internal quotations marks omitted).  "The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation" and there "is no obligation to deal fairly or in good faith absent an existing contract."  Racine & Laramie, Ltd. v. Dep't of Parks & Recreation, 11 Cal.App.4th 1026, 1031-32 (1992) (internal quotation marks omitted).

In their second cause of action, Plaintiffs allege that Countrywide knew that they could not meet their repayment obligations under the promissory note and Deeds of Trust unless they were able to refinance their first and second mortgages.  FAC ¶ 58.  After Countrywide refused to refinance their loans, Plaintiffs approached another lender, First Federal Bank, which agreed to refinance the first mortgage at a 4% interest rate, subject to Countrywide's agreement to refinance the second mortgage at 8% interest.  Id. ¶¶ 59-60.  Countrywide, however, rejected Plaintiffs' application to refinance the second mortgage "because they stopped writing second mortgages behind jumbos."  Id. ¶ 63.  According to Plaintiffs, Countrywide's conduct interfered with their ability to "mitigate their damages by refinancing the loan," ostensibly in violation of the breach of the implied covenant of good faith and fair dealing.  See Pls.' Opp'n at 13.

In its prior order issued on May 19, 2010, Dkt. 36, the Court explained that "[t]o the extent that Plaintiffs are complaining that Countrywide acted in bad faith by refusing to

give them a lower interest rate, they must demonstrate that such implied obligation emanates from an actual contract." Dkt. 36 at 8.  Despite that ruling, Plaintiffs continue to allege that Countrywide had an implied duty to lower its interest rate on the second mortgage so that they could refinance their first mortgage through First Federal Bank.  It is unclear how Countrywide's refusal to refinance its existing mortgages deprived Plaintiff of any benefits conferred under their existing mortgages.  Nor has Plaintiffs cited any authority to support their theory of liability.  Accordingly, Defendants' motion to dismiss Plaintiffs' second claim for breach of the implied covenant of good faith and fair dealing is granted, and said claim is dismissed with prejudice.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992) (dismissal with prejudice upheld where court had instructed plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

### C. FRAUDULENT MISREPRESENTATION AND FRAUDULENT NON-DISCLOSURE

Plaintiffs' fifth cause of action is for fraudulent misrepresentation and fraudulent nondisclosure.  To state a claim for fraudulent misrepresentation, a party must allege facts to support the following elements: 1) misrepresentation; 2) knowledge of falsity; 3) intent to defraud; 4) justifiable reliance; and 5) damages.  Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009).  The elements of a claim for fraudulent concealment are: "1) suppression of a material fact; 2) by one who is bound to disclose it ...; 3) with intent to deceive a person unaware of the concealed fact and who would not have acted had he known of the fact."  Melanson v. United Air Lines, Inc., 931 F.2d 558, 563 (9th Cir. 1991).

Plaintiffs' fraud claim is based on allegations that Whiteside misrepresented to Dr. Newsom that he would receive a "no cost, not charge" loan when, in fact, Whiteside allegedly knew that significant fees would be charged.  FAC ¶¶ 78-81.  Countrywide argues that no facts are alleged to impute Whiteside's conduct to Countrywide.  Defs.' Mot. at 11-12.  This is incorrect.  The pleadings allege that Whiteside was acting as an employee for America's Wholesale Lender, a division of Countrywide, which encouraged her to place

1  Plaintiffs in "bad loans," which were more profitable for Countrywide.  Id. ¶¶ 76, 84.[2]
2  Drawing all inferences for Plaintiffs, the Court finds such that allegations are sufficient to
3  establish a nexus between Whiteside's conduct and Countrywide.  See Garcia v. W & W
4  Commty. Devel., Inc., 186 Cal.App.4th 1038, 1047 (2010) (noting that under California
5  law, an employer may be vicariously liable for the torts of its employees committed within
6  the scope of their employment).

7  Next, Countrywide relies on Nymark v. Heart Fed. Savings & Loan Assn., 231
8  Cal.App.3d 1089 (1991) for the proposition that, "as a general rule, a financial institution
9  owes no duty of care to a borrower when the institution's involvement in the loan
10 transaction does not exceed the scope of its conventional role as a mere lender of money."
11 Id. at 1095.  Despite Countrywide's misleading suggestions to the contrary, Nymark does
12 not support the sweeping conclusion that a lender *never* owes a duty of care to a borrower.
13 Rather, the Nymark court explained that the question of whether a lender owes such a duty
14 requires "the balancing of various factors, among which are [1] the extent to which the
15 transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the
16 degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection
17 between the defendant's conduct and the injury suffered, [5] the moral blame attached to
18 the defendant's conduct, and [6] the policy of preventing future harm."  Id. at 1098
19 (citations omitted).  Here, Countrywide makes no attempt to establish or address these
20 factors in its moving papers, and the Court declines to do so sua sponte.  See Indep. Towers
21 of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the
22 advocates to inform the discussion and raise the issues to the court.").  Accordingly,
23 Defendants' motion to dismiss Plaintiffs' fifth cause of action for fraud is denied.

---

[2] Defendants assert that the Court previously found that "Plaintiffs admit Whiteside 'worked for Defendant Banker's Alliance', . . . ."  Defs.' Mot. at 5.  The Court made no such "finding."  Rather, the Court simply noted that the allegations in the SAC were unclear as to Whiteside's employment affiliation.  In any event, an evidentiary determination regarding the identity of Whiteside's employer or actual relationship with Countrywide, if any, cannot be determined on a Rule 12(b)(6) motion to dismiss.

- 8 -

### D. UCL

Plaintiffs' sixth cause of action alleges that Defendant violated the UCL, which makes actionable any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009). The FAC alleges that Defendants violated all three prongs of the UCL.

#### 1. Unlawful Business Practice

"[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder." Farmers Ins. Exch. v. Super. Court, 2 Cal.4th 377, 383 (1992) (quotations and citations omitted); Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000). The violation of almost any federal, state, or local law may serve as the basis for a UCL claim. Saunders v. Superior Court, 27 Cal.App.4th 832, 838-39 (1994). Here, the FAC relies on Defendants' alleged violations of TILA and RESPA as the unlawful practices that form the basis of their UCL claim. In particular, the pleadings allege that Countrywide violated TILA by failing to provide Plaintiffs with properly completed notices of their right to cancel and by including excessive charges in the TILA disclosure statement. FAC ¶¶ 89-90. Countrywide also allegedly charged excessive fees in violation of RESPA. Id. ¶ 91, 94.

##### *a) TILA*

The purpose of TILA is to assure a meaningful disclosure of credit terms so that consumers can understand more readily various available terms and avoid the uninformed use of credit. 15 U.S.C. § 1601(a); Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114, 1118 (9th Cir. 2009). TILA requires the lender to disclose to borrowers specific information, including notice of their right to rescind (i.e., cancel) a transaction. See 15 U.S.C. §§ 1635, 1638; 12 C.F.R. § 226.23(b)(1). TILA provides borrowers two remedies for disclosure violations: (1) rescission, 15 U.S.C. § 1635; and (2) damages, 15 U.S.C. §

1640.  A violation of TILA can serve as the foundation for a UCL claim.  See Pacific Shore Funding v. Lozo, 138 Cal.App.4th 1342, 1347 (2006) ("a lender's violation of TILA can be an unfair business practice or act under [§ 17200]"); Davidson v. Countrywide Home Loans, Inc., No. 09-CV-2694-IEG, 2010 WL 2925440, at *8 (S.D. Cal. July 23, 2010) ("Because these causes of action [i.e., for TILA and RESPA violations] are not dismissed from the FAC, they can serve as the predicate violations under the 'unlawful' prong.").[3]

Countrywide contends that Plaintiffs lack standing to assert a UCL claim insofar as it is predicated upon a violation of TILA because the FAC does not allege that Plaintiffs lost any money or property as a result of Countrywide's alleged TILA violations.  Defs.' Mot. at 16.[4]  Under California law, a plaintiff has standing under the UCL when he or she has:  (1) expended money due to the defendant's acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim.  See Hall v. Time Inc., 158 Cal.App.4th 847, 854-55 (2008).  In their opposition brief, Plaintiffs argue that they have "spent several thousands of dollars through refinancing . . . and on interest payments that they were originally promised."  Pls.' Opp'n at 18.  These allegations of harm appear nowhere in Plaintiffs' UCL cause of action.  See FAC ¶¶ 89-114.  But even if they did, no facts are alleged demonstrating a nexus between the allegedly defective TILA notices and such purported monetary injury.  See Hall, 158 Cal.App.4th at 855 (affirming dismissal of UCL claim for lack of standing where plaintiff failed to show that "he 'lost money or property as a result' of the alleged unfair competition").  Therefore, as the FAC is currently pled, Plaintiffs lack standing to allege an unlawful business practices claim based on Countrywide's alleged violation of TILA.  Given Plaintiffs' numerous prior opportunities to amend their pleadings, the Court finds that further amendment to this claim

---

[3] In their third cause of action, which is not at issue in the instant motion, Plaintiffs seek rescission of their second loan with Countrywide, pursuant to TILA.  FAC ¶ 71.

[4] Standing under TILA and the UCL are different.  A plaintiff who has "suffered the loss of a statutory right to disclosure" has standing to bring a TILA claim.  Rubio v. Capital One Bank, 613 F.3d 1195, 1204 n.3 (9th Cir. 2010).  In contrast, a plaintiff bringing a UCL claim must allege a loss of "money or property."  Id.

would be futile.  Accordingly, Plaintiffs' unlawful business practices claim, to the extent it is based on TILA, is dismissed without leave to amend.

### *b)* *RESPA*

In enacting RESPA, the Congress found "that significant reforms in the real estate settlement process are needed to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices . . . ." 12 U.S.C. § 2601(a).  The purpose of RESPA was to effect certain changes in the settlement process that will result, inter alia, "in more effective advance disclosure to home buyers and sellers of settlement costs" and "in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b)(1) & (2).  Section 8(a) of RESPA prohibits the giving or accepting of any "fee, kickback, or thing of value" in exchange for referrals of federally related mortgage loans. Id. § 2607(a).  Section 8(b) prohibits the giving or accepting of "any portion, split, or percentage" of unearned fees.  Id. § 2607(b).

Plaintiffs allege that Countrywide violated § 8 of RESPA as a result of "hidden fees and charges," apparently in the form of a prepayment penalty to refinance their loan.   FAC ¶ 91.[5]  These fees, in turn, allegedly affected the interest rate disclosed in the Truth in Lending Statement, which thus caused the interest rate in the preliminary statement "to not match" the rate disclosed in the final statement, allegedly in violation of RESPA.  Id. ¶ 92. Accepting as true Plaintiffs' allegations that the interest rate in the original Truth in Lending Statement differed from the final version, it is unclear how such conduct violates § 8 of RESPA.  Moreover, Plaintiffs fail to cite any authority for the proposition that the amount of a prepayment penalty, if triggered, constitutes a de facto change in the interest rate charged to a borrower—or that such "change" must be disclosed in a Truth in Lending Statement.

---

[5] Plaintiffs do not specify whether they are relying on § 8(a) or (b).

Plaintiffs also allege that Countrywide violated RESPA as a result of paying "excessive fees to the mortgage broker." Id. ¶ 94. However, the Ninth Circuit recently joined other circuits in holding that § 8 of RESPA does not apply to lender overcharges for services that were provided. See Martinez v. Wells Fargo Home Mortg., Inc., 598 F.3d 549, 554 (9th Cir. 2010) ("We join our sister circuits in holding that the text of Section 8(b) is unambiguous and does not extend to overcharges . . . ."). Tellingly, Plaintiffs fail to address Martinez in their opposition, notwithstanding the fact that it is directly on point. The Court therefore dismisses Plaintiffs' UCL claim to the extent it is based on a violation of RESPA.[6] Because it is apparent that no amendment can cure these deficiencies, this dismissal is without leave to amend.

### 2. Unfair Business Practice

A business practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." Olszewski v. Scripps Health, 30 Cal.4th 798, 827 (2003). An unfair business practice is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008); Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1203 (9th Cir. 2001). Alternatively, an act is "unfair" under the UCL "if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could have reasonably avoided." Berryman v. Merit Prop. Mgmt., Inc., 152 Cal.App.4th 1544, 1555 (2007). "[W]here a claim of an unfair act or practice is predicated on public policy, … the public policy which is a predicate to the action must be 'tethered'

---

[6] Nor do Plaintiffs dispute the fact that any claim that Defendants violated the anti-kickback provisions of RESPA, 12 U.S.C. § 2607, is barred by RESPA's one-year limitations period, id. § 2614. The limitations period commenced in September 2006, when Plaintiffs' loans closed. Snow v. First Am. Title Ins. Co., 332 F.3d 356, 359 (9th Cir. 2003). Plaintiffs did not allege a RESPA claim until September 9, 2009, after the statute of limitations had already run. A time-barred RESPA claim cannot serve as the foundation for a UCL claim. See Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000) ("A court may not allow plaintiff to 'plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition.'") (citations omitted).

to specific constitutional, statutory or regulatory provisions." <u>Gregory v. Albertson's, Inc.</u>, 104 Cal.App.4th 845, 854 (2002) (citing <u>Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.</u>, 20 Cal.4th 163 (1999)).

In the instant case, Plaintiffs complain that the following conduct constitutes unfair business practices: (1) charging $100,000 in prepayment penalties; (2) Whiteside's false representation that Plaintiffs would not be charged anything to refinance their loan; (3) increasing the interest rate on Plaintiffs' mortgage at the last minute; (4) failing to provide proper TILA notices; (5) disclosing higher fees in the Borrower's Closing Statement; (6) failing to provide *initial* Truth in Lending Statements; (7) refusing to rescind the loans even though Countrywide allegedly knew Plaintiffs could not afford the monthly payments; and (8) forcing Plaintiffs to obtain multiple appraisals. FAC ¶¶ 98, 99, 103, 106, 108, 109, 110, 112.

Despite the numerous allegations underlying Plaintiffs' claim under the "unfairness" prong of the UCL, Defendants' motion only addresses some, but not all, of the allegations that comprise Plaintiffs' unfair practices claim. Defs.' Mot. at 18-19. Because Countrywide's arguments, even if valid, would not be dispositive of Plaintiffs' unfair practices claim, the Court declines to consider Countrywide's arguments at this juncture. <u>See</u> <u>Indep. Towers of Wash.</u>, 350 F.3d at 929.

### 3. Fraudulent Business Practices

Conduct is considered "fraudulent" under the UCL if the conduct is "likely to deceive." <u>Morgan v. AT & T Wireless Servs., Inc.</u>, 177 Cal.App.4th 1235, 1254 (2009). Although a UCL claim need not plead the elements of common law fraudulent deception, it must allege the existence of a duty to disclose. <u>Berryman v. Merit Prop. Mgmt., Inc.</u>, 152 Cal.App.4th 1544, 1557 (2007). "Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." <u>Id.</u> Plaintiff must also allege reliance. <u>In re Tobacco II Cases</u>, 46 Cal.4th at 328; <u>Cattie v. Wal-Mart Stores, Inc.</u>, 504 F. Supp. 2d 939, 947-49 (S.D. Cal. 2007).

- 13 -

Here, the "fraudulent practices" underlying Plaintiffs' UCL claim are alleged as: (1) failing to disclose all material loan terms and the inclusion of false, unfair and unconscionable terms; (2) underwriting the loan without due diligence; (3) including loan terms that Plaintiffs could not realistically meet; (4) paying Whiteside to place Plaintiffs into a loan they could not afford, but would result in a higher profit for Countrywide; and (5) failing to disclose the yield spread premium ("YSP"). FAC ¶ 115.

As to the first, third and fourth assertions, Countrywide repeats its argument challenging Plaintiffs' fifth cause of action for fraud, and argues that it owed no duty to Plaintiffs beyond that of a lender. Defs.' Mot. at 20. This argument fails for the same reasons set forth above. However, with respect to Plaintiffs' second assertion regarding Countrywide's failure to exercise adequate due diligence, Plaintiffs overlook that Countrywide engages in such process for its own benefit, not for that of the Plaintiffs. Finally, Plaintiffs' fifth claim regarding the disclosure of the YSP is time-barred by RESPA's one-year statute of limitations. Although Plaintiffs' loans closed in September 2006, Plaintiffs did not file suit until July 10, 2009. Snow, 332 F.3d at 359. Consequently, Plaintiffs cannot rely on the failure to disclose the YSP as a basis for their fraudulent business practices claim.

## IV.  CONCLUSION

IT IS HEREBY ORDERED THAT:

1. Countrywide's motion to dismiss is GRANTED IN PART and DENIED IN PART, as follows:

   a. GRANTED as to Plaintiffs' first cause of action for cancellation of a voidable contract under California Revenue and Tax Code sections 23304.1 and 23305a;

   b. GRANTED as to Plaintiffs' second cause of action for breach of the implied covenant of good faith and fair dealing;

   c. DENIED as to Plaintiffs' fifth cause of action for fraudulent misrepresentation and fraudulent non-disclosure;

- 14 -

        d.     GRANTED as to Plaintiffs' sixth cause of action for unlawful business practices under the UCL;

        e.     DENIED to Plaintiffs' sixth cause of action for unfair business practices under the UCL; and

        f.     GRANTED as to Plaintiffs' sixth cause of action for fraudulent business practices under the UCL to the extent such claim is based on allegations that Countrywide failed to exercise due diligence in approving the loans and that Countrywide failed to disclose the YSP.  The motion as to Plaintiffs' fraudulent business practices claim is DENIED in all other respects.

    2.     Defendants shall file their Answer within fourteen (14) days of the date this Order is filed.

    3.     Should the parties file any additional noticed motions in this action under Civil Local Rule 7-2, the moving and opposition papers shall be limited to fifteen (15) pages and reply briefs shall be limited to ten (10) pages.

    4.     The parties shall appear for a telephonic Case Management Conference scheduled for **March 10, 2011 at 3:45 p.m.**  The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than three (3) days prior to the Case Management Conference that complies with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

    4.     This Order terminates Docket 60.

IT IS SO ORDERED.

Dated: November 29, 2010

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

- 15 -