UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER NEWSOM, et al.<br><br>Plaintiffs<br><br>v.<br><br>BANKERS ALLIANCE INC., et al.<br><br>Defendants | Case No.:4:09-cv-05288-SBA  (NJV)<br><br>**REPORT & RECOMMENDATION ON PLAINTIFFS' SECOND MOTION FOR DEFAULT JUDGMENT AND ON DEFENDANT WHITESIDE'S MOTION TO SET ASIDE ENTRY OF DEFAULT**<br><br>Re: Dkt. Nos.: 121, 136. |

## INTRODUCTION

The district court has referred two motions to the undersigned for a report and recommendation. After requesting further briefing from the parties and conducting a hearing on the motions, for the reasons stated below, the undersigned will recommend that (1) Whiteside's motion to set aside entry of default be granted; (2) Plaintiffs' motion for default judgment against Julie Whiteside be denied; and (3) Plaintiffs' motion for default judgment against Bankers' Alliance be denied without prejudice.

## PROCEDURAL HISTORY

This case has a long procedural history. *See generally* Doc. No. 103 at 2-3. In relevant part, Plaintiffs filed their original complaint in California Superior Court against defendants Countrywide and Bankers' Alliance in July 2009, but did not serve either defendant. Doc. No. 1. In September 2009, Plaintiffs amended the complaint and served Countrywide. Countrywide and another defendant (not Bankers' Alliance), and removed the Amended Complaint to this court. *Id*. On June 24, 2010, Plaintiffs obtained an order for substituted service on Bankers' Alliance. Doc. No. 47. Plaintiffs attempted to substitute serve Bankers' Alliance on March 18, 2011 (Doc. No. 77), but failed to serve it with a copy of the operative complaint (Doc. No. 77-1). Plaintiffs did

1    not name Julie Whiteside as a defendant until they filed the Second Amended Complaint in
2    January 2010. Doc. No. 13. Plaintiffs did not obtain a summons for Whiteside until December
3    2010 (Doc. No. 67), and they did not attempt to serve her until January 2011 (Doc. No. 76). When
4    they did serve Whiteside, they also failed to include a copy of the operative complaint. Plaintiffs
5    moved for default judgment as to both Whiteside and Bankers' Alliance in March 2012 (the "First
6    Motion for Default Judgment"), and the district court referred the motion to the undersigned. Doc.
7    No. 95. Further briefing was ordered to clarify Plaintiffs' service efforts and their damages. Doc.
8    No. 98. The undersigned found that service was insufficient for several reasons, and
9    recommended that the district court deny the First Motion for Default Judgment and issue an order
10   to show cause why the case should not be dismissed for failure to serve the defendants within 120
11   days of removal, as required by Federal Rule of Civil Procedure 4(m). Doc. No. 103.
12   Specifically, the undersigned found that service had been ineffective under federal law because
13   Plaintiffs had attached a copy of a superseded complaint to the summons they delivered to
14   Whiteside and Bankers' Alliance. *Id*. The district court adopted the report and recommendation,
15   denied the motion for default judgment, and issued an order to show cause. Doc. No 105.

16   In their response to the order to show cause, Plaintiffs argued that they had been unable to
17   serve the defendants timely because both defendants "could not be found for the majority of this
18   case, despite all good faith efforts by counsel to do so. Julie Whiteside has moved several times,
19   and Bankers' Alliance went out of business." Doc. No. 106, ¶ 4. The district court discharged the
20   order to show cause on September 5, 2012, and ordered Plaintiffs to serve both defendants within
21   thirty days. Doc. No. 109. Plaintiffs waited two weeks to obtain new summonses for Bankers'
22   Alliance and Whiteside. Doc. Nos. 111 & 112. Counsel explained at the hearing that he delayed
23   getting the summonses because he did not know that he needed to obtain new ones. Counsel then
24   obtained another extension of time to accomplish service on these defendants. Doc. No. 114.

25   Plaintiffs served Bankers' Alliance with a summons and the operative complaint by
26   substitute service on October 22, 2012. Doc. No. 113. A process server declared that he "served"
27   Julie Whiteside on October 22, 2012, by delivering the summons and the operative complaint to
28   "Jamie Pantuso, Brother in Law" at 2762 Filbert Street in San Francisco. *Id*. When neither

United States District Court
Northern District of California

Whiteside nor Bankers' Alliance responded to the complaint, Plaintiffs obtained entry of default against both defendants. Doc. No. 120. On December 18, 2012, Plaintiffs filed the present motion for default judgment against Whiteside and Bankers' Alliance (the "Second Motion For Default Judgment"), which the district court referred to the undersigned on January 15, 2013. Doc. Nos. 121 & 122.

Thereafter, Whiteside filed a motion to dismiss (Doc. No. 125), which was stricken by the district court (Doc. No. 129); an opposition to the motion for default judgment (Doc. No. 130); a motion to set aside entry of default, which the court also referred to the undersigned (Doc. No. 136 & 139); and a supplemental declaration and/or reply in support of her motion to set aside entry of default (Doc. No. 146).

**JURISDICTION**

Defendant Countrywide removed the action in 2009 under 28 U.S.C. § 1441, on the ground that the complaint included a number of federal claims. Doc. No. 1. Countrywide asserted that the district court could assume supplemental jurisdiction over the remaining state law claims because they all arose from the same set of operative facts on which the federal claims were based. *Id*. at 3. After a motion to dismiss and a number of amendments, Plaintiffs voluntarily dismissed their one remaining federal claim. *See* Doc. No. 88 (voluntarily dismissing TILA claim). Federal courts may continue to assert supplemental jurisdiction over state law claims after federal claims have been dismissed from a removed case. *See* W. Schwarzer, *et al*., FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 2:841 (The Rutter Group 2012) (federal courts look at case at time of jurisdiction to determine whether subject matter jurisdiction exists; later changes, including voluntary dismissal of remaining federal claim, do not terminate removal jurisdiction). The district court accordingly may retain supplemental jurisdiction over Plaintiffs' remaining state law claims in this action.

**DISCUSSION**

**I.     The Action Against Julie Whiteside Should Proceed On The Merits.**

    **A. Whiteside's Default Should Be Vacated Because She Was Never Served.**

The district court discharged its order to show cause and, after an additional extension,

1 gave Plaintiffs until October 25, 2012 to serve Whiteside. Plaintiffs documented their attempts to serve Whiteside in October 2012 at 1212 Stearns Drive in Los Angeles, where Whiteside resided and where Plaintiffs had successfully found her in the past.[1]  *See* Doc. No. 141, Ex. 1. The process server, for an unstated reason, concluded that Whiteside no longer lived there. Doc. No. 145 ¶ 14 ("No service was accomplished at Stearns Drive despite the[] efforts" of the process server, and the process server determined that Whiteside no longer lived at that address) & Ex. F at 2 (process server's certificate stating Whiteside no longer lives at Stearns Dr. address). A process server then attempted service on Whiteside at a Filbert Street address in San Francisco after discovering that Whiteside's sister lived at that address, and that Whiteside at one point had lived there. Doc. No. 145 ¶¶ 16, 18. Plaintiffs filed a proof of service showing that substitute service was accomplished by delivering the summons and complaint to "Jamie Pantuso" who stated that (1) Whiteside did not live at the address and (2) he had never heard of her before. Doc. No. 121, Ex. 10. When the undersigned requested further briefing on the sufficiency of this service (Doc. No. 134), Plaintiffs filed an amended proof of service (Doc. No. 145, Ex. J). According to the amended proof of service, Pantuso explained that Whiteside was his wife's sister, but that he did not know her. *Id*. Pantuso "did take the document and said he would give the documents to [his wife] to give to her sister." *Id*.

In their opposition to Whiteside's motion to set aside the default against her, Plaintiffs argue that: (1) Whiteside was served with the Second Amended Complaint; (2) Whiteside had actual notice of the lawsuit; and (3) they properly relied on Pantuso's representation that he was Whiteside's brother-in-law when they attempted to serve Whiteside at Filbert Street. *See* Doc. No. 144. These arguments fail. The undersigned already addressed the first argument when he found that serving the summons with a copy of a superseded complaint was invalid. *See* Doc. No.

---

[1] Plaintiffs used the Stearns Drive address to deliver a copy of the Second Amended Complaint to Whiteside in person in January 2011 (Doc. No. 76-1), send her a copy of the Fourth Amended Complaint by Federal Express in March 2011 (Doc. No. 74), send her a letter regarding her purported default in March 2011 (Doc. No. 145, Ex. D), and mail her a notice of deposition in November 2011 (Doc. No. 136, Ex. C). They also spoke with Whiteside's husband in November 2011 and confirmed that Whiteside lived at 1212 Stearns Dr., although she was away on business at the time. Doc. No. 141, Ex. E. Thus, for all of 2011, Plaintiffs communicated with Whiteside at the 1212 Stearns Dr. address.

103 at 4. Plaintiffs did not object to this finding, and admitted that they had failed to serve Whiteside with a copy of the operative complaint together with the summons. Doc. No. 104 at 2 ("Counsel takes full responsibility and asks on behalf of Plaintiff the opportunity for re-service . . . Counsel acknowledges the court's position that service was improper and asks for the opportunity to correct it"). The district court adopted that finding, and ordered Plaintiffs to serve Whiteside within thirty days because she had not yet been served. Doc. No. 105. Second, Plaintiffs cite no authority for the proposition that actual notice of a lawsuit (without more) is sufficient service of process under the federal rules. It is not. *See Hard Drive Productions v. Doe*, 2012 U.S. Dist. LEXIS 130351, *4-*5 (N.D. Cal. Sept. 10, 2012) ("Giving a defendant actual notice of litigation does not by itself constitute valid service of process. . . . To effectuate service, a party must comply with the requirements of Federal Rule of Civil Procedure 4 or other applicable statutes") (internal citations omitted). Plaintiffs also provide no authority for their last argument that delivering a summons and complaint to an address that is *not* a defendant's "dwelling or usual place of abode," leaving it with a person who does not know the defendant but states he will deliver it to someone who does know the defendant for delivery to the defendant, in any way, shape, or form comports with Federal Rule of Civil Procedure 4(e), or with the rules governing service in California (Cal. Code Civ. Proc. §§ 415.10 *et seq.*). Whether Pantuso is Whiteside's brother-in-law (Doc. No. 144) is irrelevant: Whiteside did not live at the Filbert address, a fact Pantuso explained to the process server. Plaintiffs' attempt to serve Whiteside by substitute service at that address therefore is inadequate. *See* Fed. R. Civ. P. 4(e)(2); Cal. Code Civ. Proc. § 415.20.

As the undersigned observed in its Report and Recommendation on the First Motion for Default Judgment, strict compliance is required with the rules governing service. Doc. No. 103 at 4. Neither actual notice of the lawsuit, mailing the complaint, nor leaving the documents with a relative at a place where the defendant does not reside suffices to accomplish service. *Id.; see also* W. Schwarzer, *et al.*, FEDERAL CIVIL PROCEDURE BEFORE TRIAL §§ 5:8.1, 5:12, 5:165, 5:174-5:188 (The Rutter Group 2012). Plaintiffs' October 2012 service on Whiteside was inadequate.

//

5

### B. Whiteside's Default Should Be Set Aside For Good Cause.

Even if the October 2012 service on Whiteside were deemed adequate, the default should be set aside for good cause under Federal Rule of Civil Procedure 55(c). *See United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) ("*Mesle*"); *see also TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 695 (9th Cir. 2001).

#### 1. Setting Aside Default Under F.R.C.P. 55(c).

To determine whether "good cause" exists, a court considers three factors: (1) whether reopening the default would prejudice the plaintiff; (2) whether the defendant's culpable conduct led to the default; and (3) whether the defendant had a meritorious defense. *Mesle*, 615 F.3d at 1091. While these factors are "disjunctive" and a court may deny relief if any of the three factors applies, the court's decision is discretionary. *Brandt v. American Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1111-12 (9th Cir. 2011) (factors for establishing "excusable neglect" under Rule 60(b)(1) are same as factors for establishing "good cause" under Rule 55(c), and analysis "is at bottom an equitable one taking account of all relevant circumstances surrounding the party's omission"). The Ninth Circuit has an "oft stated commitment to deciding cases on the merits whenever possible." *Mesle*, 615 F.3d at 1091; *see also Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) ("[D]efault judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible"). Absent "'extreme circumstances,'" judgment by default is inappropriate. *Mesle*, 615 F.3d at 1091-92 (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)) (district court's failure to examine "extreme circumstances" requirement for judgment by default "fundamentally altered the standard" and was reversible error). Doubts as to the propriety of a default judgment should be resolved against the party seeking default. *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). The party seeking to set the default aside bears the burden of establishing good cause exists to vacate the default. *TCI*, 244 F.3d at 696.

#### 2. There Is Good Cause For Setting Aside Whiteside's Default.

Whiteside meets the "good cause" requirements of Rule 55(c).

//

//

6

First, reopening the case would not prejudice Plaintiffs. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" *TCI*, 244 F.3d at 701 (citing *Falk*, 739 F.2d at 463). Being forced to litigate on the merits cannot be considered prejudicial in this context (*id*.), especially since Plaintiffs argue that they have the documents relevant to the case (Doc. No. 144 at 4-5). At oral argument, Plaintiffs admitted that they will suffer no prejudice besides delay.

Second, Whiteside was not culpable in failing to respond to this lawsuit. A movant is not "culpable" simply because it intentionally decided not to answer a complaint. *See TCI*, 244 F.3d at 697. The Ninth Circuit has

> typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond. . . [I]t is clear that simple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without demonstration that other equitable factors, such as prejudice, weigh heavily in favor of a denial of the motion to set aside a default.

*Mesle*, 615 F.3d at 1092-93 (finding of culpability requires conduct that is more like bad faith, such as with "an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process"). Failure to respond based on the belief that one is not a party to the action thus has been found not "culpable." *See Quach v. Cross*, 2004 U.S. Dist. LEXIS 28983, *20-*24 (C.D. Cal. Dec. 3, 2004) (no culpable conduct where defendant did not respond to complaint because he believed service was improper and had failed to confer personal jurisdiction). After Whiteside received the Second Amended Complaint at the Stearns Drive address, she contacted Tiffany Norman, Plaintiffs' former counsel. Doc. No. 143, ¶ 1.[2] In or around April 2011, Norman allegedly told Whiteside that "the wrong version of the complaint was sent to [Whiteside] in error." *Id*. Norman suggested that Whiteside contact Michael Rooney, Plaintiffs' new counsel, to clarify the issue. *Id*. Whiteside declares that

---

[2] Plaintiffs contend they also sent Whiteside a letter to Stearns Dr. in March 2011 letter regarding default (Doc. No. 145, Ex. D), but Whiteside denies receiving that letter (Doc. No. 146 at 4).

7

"[i]mmediately thereafter, I telephone counsel Rooney who informed me that he had a case against Countrywide and that there was nothing I needed to do about the wrong version of the complaint sent to me." Doc. No. 137, ¶ 7. Rooney denies that this conversation took place. Doc. No. 141, ¶ 3. Setting aside whether Whiteside can prove this conversation occurred or whether it was reasonable for her to rely on opposing counsel, she has offered an explanation for her default. The undersigned notes that Whiteside is not represented by counsel, and cannot be deemed a sophisticated legal entity.

Plaintiffs also argue that Whiteside had actual notice of the action, and that this should suffice to establish service of process. Doc. No. 101; *see also* Doc. Nos. 141 & 141-2 (Whiteside appeared at a deposition in November 2011, and was asked questions regarding her relationship with Plaintiffs, the loans at issue in the complaint, and the specific allegations in the complaint against her). This argument fails for several reasons. Given that Whiteside had not been properly served with a summons and operative complaint, and that Plaintiffs did not serve her at the deposition, she was not a party to the lawsuit in November 2011 even if her name appeared in the caption and even if she read the allegations referencing her in the complaint.[3] Moreover, based on the alleged conversations she had with Norman and Rooney, she believed that she was not actually a defendant in the matter. When she found out that default had been entered against her (Doc. No. 143, ¶ 4), Whiteside demonstrated her clear intention to defend by filing a motion to dismiss, an opposition to the motion for default judgment, and a motion to vacate entry of default. She responded to the undersigned's order requiring further briefing (Doc. No. 143), filed a supplemental declaration (Doc. No. 146), and appeared at the hearing.

Finally, Whiteside presents specific facts that, if true, would constitute a defense. She does not need to establish that she will prevail on the defense, only that the defense is legally cognizable and would constitute a complete defense to the action if proved at trial. *See Integrated*

---

[3] Whiteside's participation at this deposition does not excuse Plaintiffs from executing proper service of process on her, nor does it prevent Whiteside from moving to dismiss based on lack of service of process. *See, e.g., Fehl v. Manhattan Ins. Group*, 2012 U.S. Dist. LEXIS 70013, *6 (N.D. Cal. May 18, 2012) (participating in discovery or filing appearance in lawsuit alone does not waive right to service of process if defendant has timely objected).

8

*Sports Media, Inc. v. Mendez*, 2011 U.S. Dist. LEXIS 60450, *5 n.1 (N.D. Cal. May 11, 2011). The Court need not determine whether the facts are true at this time, as that question "would be the subject of the later litigation." *TCI*, 244 F.3d at 700. The burden to demonstrate the existence of meritorious defenses "is not extraordinarily heavy." *Id.; see also Mesle*, 615 F.3d at 1094 (describing burden as "minimal"). Whiteside presents several defenses. Because Whiteside can point to tangible prejudice from the delay in service, she may prevail on a motion to dismiss based on the delay under Rule 4(m). *See* Doc. Nos. 109 & 143; *see also Efaw v. Williams*, 473 F.3d 1038 (9th Cir. 2006) (vacating judgment and remanding case with instructions to dismiss action against defendant where plaintiff had failed to serve defendant for seven years, there was no evidence that defendant knew about the action or contributed to delay in service, and where defendant was severely prejudiced by delay). Plaintiffs failed to name Whiteside in this action until January 2010 when they filed the Second Amended Complaint, and they attempted to serve her for the first time in January 2011. Whiteside represents that the regular retention practice of mortgage brokers is to keep client files for three years. *See* Doc. No. 143, ¶ 5; *see also* Doc. No. 137, ¶¶ 8-9 (files for Plaintiffs' 2006 transactions would have been destroyed after three years); Doc. No. 146 at 5. Whiteside did not maintain copies of Plaintiffs' files after 2009; they were destroyed in the regular course of business before Whiteside was even named in the action, and more than a year before Plaintiffs even attempted to serve her with a copy of the complaint. This illustrates why Rule 4(m) requires defendants to be served within 120 days.[4] Whiteside asserts that the files contained exculpatory documents, such as disclosures signed by Plaintiffs and conversation logs. Doc. No. 137, ¶ 9; Doc. No. 143, ¶ 5. If the case is not dismissed pursuant to Rule 4(m), Whiteside nonetheless will be able to testify about her recollection of the events. She argues that Plaintiffs knew that they were not receiving "no cost, no charge" loans, knew about prepayment penalties, and were required to sign documents detailing these facts. Doc. No. 143, ¶ 5. If true, these facts would defeat Plaintiffs' claims, all of which are based on Whiteside's alleged omissions and misrepresentations.

---

[4] Plaintiffs' argument that "if [Whiteside] destroyed records in this case, that was a disadvantage she brought on herself" (Doc. No. 141, ¶ 4) therefore misses the mark.

1    For these additional reasons, the undersigned will recommend that Whiteside's motion to
2 vacate entry of default be granted. In light of this recommendation, the undersigned will
3 recommend that Plaintiffs' Second Motion for Default Judgment as to Whiteside be denied.

**II.     Entering Default Judgment Against Bankers' Alliance Would Be Premature.**

The district court granted Plaintiffs' motion for substitute service on Bankers' Alliance. Doc. No. 47. Plaintiffs served the summons and Fourth Amended Complaint on Bankers' Alliance by serving the California Secretary of State on October 22, 2012. Doc. No. 113. The process server delivered the summons and complaint to the California Secretary of State, together with the district court's order authorizing substituted service and the required fee. *Id*. This method is an adequate means of serving process on a corporation.[5]  *See* Fed. R. Civ. P. 4(h)(1)(B).

On December 18, 2012, the Clerk of the Court entered entry of default against Bankers' Alliance. Doc. No. 120. Plaintiffs moved for default judgment the same day. Doc. No. 121.

In the operative complaint, Plaintiffs allege that Whiteside and Bankers' Alliance defrauded them and violated their fiduciary duty in the course of refinancing Plaintiffs' mortgages. *See* Doc. No. 59. Whiteside, a "loan officer" alleged to be employed by Bankers' Alliance and/or former defendant Countrywide (*id*. at ¶¶ 11-12, 15, 95), promised Plaintiffs that they would obtain a "no cost, no charge" refinance at specific interest rates. Instead, Whiteside obtained loans with fees and costs, and higher interest rates. She told Plaintiffs not to worry about the rate increase because they could refinance within a few months. Plaintiffs signed the loan documents. When they were unable to refinance a few months later, they filed suit. All of the claims Plaintiffs assert against Bankers' Alliance are derivative, and are based entirely on Whiteside's conduct. *See* Doc. No. 59 at ¶ 17 (all statements attributed to Bankers' Alliance were made "repeatedly . . . through telephone by Julie Whiteside on behalf of Bankers' Alliance"), ¶ 27 (contrary to promises made by Whiteside), ¶¶ 49-65 (no allegations re Bankers' Alliance to support claim for contractual

---

[5]  Bankers' Alliance's corporate status has been suspended by the California Secretary of State. *See* www.http://kepler.sos.ca.gov/. Under California law, service of process on a suspended corporation is effectuated in the same manner as service on an active corporation. *See Grell v. Laci Le Beau Corp.*, 73 Cal. App. 4th 1300, 1306 (1999). Bankers' Alliance cannot defend itself in this action unless and until it obtains reinstatement. *Id*.

breach of duty of good faith and fair dealing) ¶¶ 72-77 (no allegations re Bankers' Alliance to support breach of fiduciary duty claim), ¶¶ 78-84 (no allegations re Bankers' Alliance to support fraud claim), ¶¶ 85-125 (no allegations re Bankers' Alliance to support Unfair Competition Law claim).

At oral argument, Plaintiffs confirmed that their claims against Bankers' Alliance were asserted solely under a *respondeat superior* theory. Plaintiffs therefore are only seeking to hold Bankers' Alliance vicariously liable for Whiteside's conduct. Given the undersigned's recommendation that Whiteside's default be set aside, Whiteside will litigate the merits of the action. If Whiteside is found not to be liable, a default judgment against Bankers' Alliance would be unjust and inconsistent. Courts in these circumstances are reluctant to grant default judgment against defendants whose liability is entirely derivative. For example, the plaintiffs in *Best Deals on TV, Inc. v. Naveed*, 2008 U.S. Dist. LEXIS 86188, *28-*29 (N.D. Cal. June 18, 2008) (SBA) did not explain how the court could enter default judgment against only some members of an alleged conspiracy when other alleged members of the conspiracy who had appeared. Although the district court entered default against the non-appearing defendants, it denied default judgment without prejudice because the plaintiffs "have made no attempt to meet their very heavy burden here, to explain how the Court could enter a default judgment against only half the members of an alleged conspiracy, without working an inequity on the other half, who are actively litigating this matter." *Id*. Similarly, in *Pacific Info. Resources, Inc. v. Simple Communications*, 2008 U.S. Dist. LEXIS 92844, *3 (N.D. Cal. April 1, 2008) (MMC), the district court found that default judgment against a defendant corporation would be "premature" where the liability of the corporation was "wholly derivative" of infringement claims against another defendant that was actively litigating a related action. The district court thus denied the application for default judgment without prejudice to being renewed after the underlying infringement action was resolved. *Id*. As described above, Whiteside has presented facts that, if true, may allow her to defeat Plaintiffs' claims. Granting default judgment against Bankers' Alliance where that defendant's liability is wholly derivative of Plaintiffs' claims against Whiteside would, at this juncture, be inequitable. *See* W. Schwarzer, *et al*., FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 6:128 (The Rutter Group 2012) ("A default judgment is improper where the defaulting defendant is sought to be held

11

vicariously liable for the acts of others against whom the action continues. The default judgment would be an injustice if the others were ultimately found not liable"). The undersigned thus will recommend that the district court deny Plaintiffs' motion for default judgment as to Bankers' Alliance without prejudice. The motion may be renewed after Plaintiffs' claims against Whiteside have been resolved.

**RECOMMENDATION**

For the reasons stated above, the undersigned recommends that the district court:

(1) GRANT Whiteside's Motion To Set Aside Default (Doc. No. 136) and ORDER Plaintiffs to serve Whiteside with a summons and operative complaint within 10 days of its order adopting this Report and Recommendation;

(2) DENY Plaintiffs' Second Motion For Default Judgment as to Whiteside (Doc. No. 121); and,

(3) DENY WITHOUT PREJUDICE Plaintiffs' Second Motion For Default Judgment as to Bankers' Alliance.

Any party may file objections to this report and recommendation with the district court within fourteen (14) days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) & (C); Fed. R. Civ. Proc. 72(b); Civil L.R. 72-3. Failure to file objections within the specified time may waive the right to appeal the court's order.

Dated: February 28, 2013

_____
Nandor J. Vadas
United States Magistrate Judge