UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| PETER NEWSOM, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>BANKERS ALLIANCE INC., et al.,<br><br>    Defendants. | Case No. 09-cv-05288-SBA (NJV)<br><br>**REPORT & RECOMMENDATION RE: RECONSIDERATION OF DECISION DISCHARGING ORDER TO SHOW CAUSE**<br><br>Re: Dkt. No. 168, 189 |

At issue before the court today is (1) whether the district court "should reconsider its prior decisions discharging the order to show cause and finding 'good cause' to grant Plaintiffs an extension of time under Rule 4(m) to serve defendant Whiteside; and (2) whether the Court should now dismiss the action as to Whiteside under Rule 4(m), her motion to dismiss, or [on] any other basis." Doc. No. 189. The undersigned ordered the parties to submit declarations addressing a number of relevant issues (Doc. No. 190) and held an evidentiary hearing on January 7, 2014, at which both parties appeared. Both parties submitted additional documents, as ordered by the court. *See* Doc. Nos. 194, 197, 198.

For the reasons stated below, the undersigned recommends that the district court reconsider its decision discharging the order to show cause and dismiss the action as to Whiteside under Rule 4(m).

**I. PROCEDURAL BACKGROUND.**

The factual background of this case has been extensively described elsewhere (*see, e.g.*, Doc. Nos. 103, 148), but the procedural background is relevant here:

In my initial report and recommendation on Plaintiffs' first motion for default judgment, I

1  found that Plaintiffs had failed to serve defendant Julie Whiteside with a copy of the summons and
2  complaint within the 120 days required by Federal Rule of Civil Procedure 4(m).  *See* Doc. No.
3  103 (Plaintiff had not attempted any manner of service upon Whiteside for more than a year after
4  she was named in the action, and had never accomplished effective service upon her).  I thus
5  recommended that the district court deny the motion for default judgment and issue an order to
6  show cause why the claims against Whiteside should not be dismissed without prejudice.  *Id*.  The
7  district court adopted the report and recommendation and ordered Plaintiff to show cause why the
8  action should not be dismissed without prejudice under Rule 4(m).  *See* Doc. No. 105.  Plaintiffs
9  responded, representing that Whiteside "could not be found for the majority of this case, despite
10 all good faith efforts by counsel to do so.  Julie Whiteside has moved several times. . . .
11 Defendant[] [has] spoken with me, [is] not concerned with the summons, the case, or a defense
12 thereto."  Doc. No. 106.  The district court discharged the order to show cause and ordered
13 Plaintiffs to serve Whiteside within 30 days.  Doc. No. 109.
14     After obtaining an additional extension of time from the district court, Plaintiffs obtained a
15 new summons and attempted to serve Whiteside by leaving copies of the operative complaint with
16 her brother in law in San Francisco.  *See* Doc. No. 148 at 2.  When Whiteside again failed to
17 respond, Plaintiffs filed a second motion for default judgment, which the district court again
18 referred to me for a report and recommendation.  Doc. Nos. 121 & 122.  At this time, Whiteside
19 appeared to oppose the motion for default judgment and filed a motion for relief from entry of
20 default.  *See* Doc. Nos. 123, 136, 137.  I ordered the parties to file declarations addressing salient
21 facts and to appear for a hearing on the motion for default judgment.  *See* Doc. No. 134.  I asked
22 Plaintiffs to explain why they had taken so long to serve Whiteside, and the basis for their
23 representations that Whiteside had no intention to defend the lawsuit.  *Id*.  Plaintiffs' counsel
24 argued that Whiteside had "evaded" service, but did not explain why Plaintiffs had failed to obtain
25 any summons for Whiteside for 11 months after naming her in the action, or the basis for his
26 statement that Whiteside had moved several times since the beginning of the action -- an assertion
27 Whiteside strenuously denied.  *See* Doc. Nos. 137 (Whiteside Decl.) & 141 (Rooney Decl.).
28 Because I found that Plaintiffs still had failed to effectuate service upon Whiteside on January 20,

2

2011, I once more recommended denying the motion for default judgment, and recommended that the district court order Plaintiffs to serve Whiteside within 10 days of its order adopting the report and recommendation. Doc. No. 148. I also recommended that Whiteside's default should be set aside for good cause. *Id.*

Plaintiffs finally served Whiteside in person with a copy of the operative complaint and summons in March 2013. Doc. No. 151. When she failed to respond to the complaint, Plaintiffs requested entry of default. Whiteside moved to set aside the entry of default. Doc. No. 159. Whiteside, who is appearing in this matter *pro se*, represented to the court that she did not understand the deadline for responding. I found there was good cause to set aside entry of default and recommended the district court grant Whiteside's motion to do so. Doc. No. 163. When the district court did so, Whiteside filed a motion to dismiss. Doc. No. 168. Whiteside argued that the complaint against her should be dismissed based on Plaintiffs' failure to serve her within the time required by Rule 4(m). The district court referred the motion to dismiss to me. Doc. No. 172. I recommended denying the motion to dismiss because Plaintiffs had accomplished service within the extension of time ordered by the district court. *See* Doc. No. 182 at 3 ("Plaintiffs are correct that the district court already found good cause existed for the delay, and that Plaintiffs served Whiteside within the time allowed by the district court. Under these circumstances, the F[ourth]AC cannot be dismissed under Rule 4(m)"). I also expressed concern that Plaintiffs' counsel had misrepresented certain facts to the court, namely, that "Whiteside could not be found despite counsel's good faith efforts to do so because Whiteside had moved several times" and that counsel had "spoken with Whiteside and that she did not have 'the slightest inclination to defend' the lawsuit." Doc. No. 182 at 2.

The district court then re-referred Defendant's motion to dismiss to me with the directions described above. Doc. No. 189. Both parties filed the declarations the undersigned had requested. *See* Doc. Nos. 191 (Rooney Decl.) & 193 (Whiteside Decl.).

3

## II. DISCUSSION

### A. Facts in evidence

The following facts are derived from the parties' declarations and/or adduced from the evidentiary hearing.

Whiteside has resided on Stearns Drive in Los Angeles since December 2006.[1]

Plaintiffs were originally represented by another attorney, Tiffany Norman. On January 11, 2010, Norman filed a second amended complaint ("SAC") on behalf of Plaintiffs, for the first time naming Whiteside as a defendant in this action. Doc. No. 13. Norman did not serve Whiteside within 120 days of the filing of the SAC, as required by Rule 4(m). Norman withdrew from representing Plaintiffs and was replaced by Michael Rooney. Rooney first appeared in this action on October 15, 2010, but only acted in a consulting capacity on certain substantive issues; he was substituted into the case in May 2011. *See* Doc. Nos. 64, 85. He obtained a summons for Whiteside on December 8, 2010. Doc. No. 67. Diane Kromer, an assistant to Plaintiffs' counsel, declares that she first attempted to have Whiteside served on December 15, 2010, more than eleven months after Whiteside was named in the action. Kromer initially attempted to serve Whiteside at an address where she had never resided. After discovering that Whiteside lived at Stearns Drive, a process server delivered the SAC (which had twice been superseded) to Whiteside in person at the Stearns Drive address. **The process server delivered the SAC to Whiteside on January 20, 2011 -- more than a year after she was named as a defendant in the action.** *See* Doc. No. 13 (SAC) & Doc. No. 145 (Kromer Decl.). The record therefore establishes that, no later than January 20, 2011, Plaintiffs' counsel knew where to find Whiteside.

Upon receiving the summons and SAC, Whiteside contends that she called Norman to ask why she had been served with the document. Doc. No. 193. Norman allegedly told Whiteside that the wrong complaint had been sent to her in error, and instructed Whiteside to call Rooney.

---

[1] Although Plaintiffs received information from the U.S. Postal Service that indicated that Whiteside received mail at other addresses, the information was either outdated (in that it reflected a prior address Whiteside had used) or incorrect (in that it reflected a relative's address where Whiteside had never lived.) The U.S. Postal Service information explains why Plaintiffs believed Whiteside lived at a different address, but does not establish that Whiteside in fact did reside at a different address.

4

1    *Id*. Rooney allegedly told Whiteside that he had a case pending against another defendant and
2    there was nothing Whiteside needed to do about the complaint and may be called later to testify.
3    *Id*. Although given the opportunity to do so, Whiteside did not produce phone records
4    substantiating her allegations that she spoke with Norman and/or Rooney. Rooney denies this
5    conversation took place, and points out that it would have been illogical for him to tell Whiteside
6    not to worry about the summons when he had just gone through the trouble of obtaining a new
7    summons and serving Whiteside. On the contrary, Rooney points out that he mailed Whiteside a
8    letter to the Stearns Drive address warning her that he would take her default if she did not appear
9    to defend the action. Whiteside claims not to have received the letter.

10   In April 2011, Plaintiffs requested that the court enter default against Whiteside. Doc. No.
11   76.

12   Rooney and Whiteside met at Whiteside's deposition in November 2011. At the
13   deposition, Rooney and/or counsel for other parties in the action read the allegations of the
14   Operative Complaint that pertained to Whiteside's conduct. *See* Doc. No. 198. At the evidentiary
15   hearing, Whiteside explained that she believed that she was appearing at the deposition as a
16   witness. The court has reviewed the deposition transcript. Doc. No. 198. Plaintiffs' counsel is
17   listed as appearing for Plaintiffs; Bryan Cave LLP as appearing for Defendants; and Whiteside is
18   listed as a witness. *Id*. at 3-4. While Whiteside is listed as a defendant on the caption, and while
19   counsel did read allegations in the complaint that referred to Whiteside as a defendant, at least on
20   the record, there is no evidence that anyone enquired informally or otherwise whether Whiteside
21   was planning to defend herself in the action, asked whether she understood she was a defendant in
22   the action, or asked where she resided. *Id*. Whiteside was asked whether she had received a copy
23   of the operative Fourth Amended Complaint, and she stated she had not. *Id*. at 100-101.

24   Plaintiffs moved for default judgment as to Whiteside on March 2, 2012. Doc. No. 93.
25   This court found that the January 2011 attempted service was ineffective because Plaintiffs served
26   Whiteside with a copy of the SAC, which by that point had been superseded twice, and
27   recommended that the district court deny the motion for default judgment. After the district court
28   did so, Plaintiffs obtained a new summons and attempted service again. The court notes that in

1  earlier filings, Plaintiffs' counsel represented that a process server determined that Whiteside no
2  longer lived at the Stearns Drive address, but did not explain the basis for this conclusion. At a
3  February 26, 2013 telephonic hearing, the court asked Plaintiffs' counsel to explain how the
4  process server determined that Whiteside no longer lived at Stearns Drive; counsel referred the
5  court to the declaration of Diane Kromer (Doc. No. 145). *See* FTR at 10:55-11:08. In her
6  declaration, Kromer attaches the "certificate of *non estes*" provided by the registered process
7  server. Doc. No. 145 at 19. The certificate is dated October 11, 2012 and states that on September
8  17, 2012, after due diligence, the server was unable to locate Whiteside at the Stearns address.
9  The process server states that Whiteside no longer lives at Stearns Drive, without providing any
10  support for that conclusion. In December 2013, for the first time, counsel provided a "further"
11  declaration of due diligence from the process server. *See* Doc. No. 191 at ¶ 2 & Ex. A.[2] In this
12  new declaration (which is also dated October 11, 2012), the process server declares that a woman
13  answering the door at the Stearns Drive address on October 11, 2012 stated that Julie Whiteside
14  did not live there. *Id*. The process server described the woman answering the door as being 5'5'',
15  45 years old, 130 pounds, with blonde hair. *Id*. (At the hearing, Whiteside conceded that this
16  description matched hers.) Thus, although Plaintiffs' process server originally determined that
17  Whiteside no longer lived at the Stearns Drive address on September 17, 2012 (Doc. No. 145),
18  Plaintiffs now introduce a document purporting to memorialize an unsuccessful service attempt at
19  Stearns Drive three weeks later (Doc. No. 191) as the basis for their conclusion that Whiteside no
20  longer lived at Stearns Drive on September 17, 2012. Plaintiffs' counsel also used the new
21  declaration to suggest that Whiteside misrepresented her identity to the process server and evaded
22  service. Despite having ample notice of the nature, purpose, location and time of the evidentiary
23  hearing, Plaintiffs' counsel chose not to present the process server at the hearing to allow the court
24  to examine him on the contents of this new, belated, declaration. It is not this court's

---

[2] The court notes that the "further" declaration purports to be dated on October 11, 2012. Counsel did not explain why this declaration was not provided to the court earlier, despite the court's requests for information regarding Plaintiffs' attempts to serve Whiteside. Moreover, counsel represents that the further declaration was provided by "our process server who attempted to serve Ms. Whiteside at the Stearns address on 10/11/2008." Doc. No. 191 at 2. The declaration purports to concern an attempted service on October 11, 2012 (*id*., Ex. A), not 2008.

6

responsibility to inform counsel on how to proceed.

Whiteside appeared at the hearing. While she admits that she has interacted with process servers three times at the Stearns Drive address, she averred that no process server came to Stearns Drive on October 11, 2012.

Whiteside contends that her brokerage files contained documents that would have supported her defenses. Doc. No. 169. At the evidentiary hearing, Whiteside explained that the files contained detailed records regarding any interactions she had with Plaintiffs, including details regarding any phone conversations with them. Whiteside also contended (somewhat illogically) that her files both would have shown that she was not the broker who worked on Plaintiffs' transactions, and that the diversity of lenders she used would establish that there was no "loan flipping" scheme. Whiteside represented it is the practice of brokers to destroy their client files after three years. *See* Doc. No. 169. The files from Plaintiffs' 2006 transactions with Whiteside accordingly would have been destroyed by the brokerage office in the usual course of business in 2009 -- before Plaintiffs even named Whiteside in the complaint. (Whiteside testified that she confirmed that her files had been destroyed.) Thus, Whiteside's argument that she was prejudiced by Plaintiffs' additional delay in serving her after naming her in the SAC is a red herring. Whatever exculpatory documents were contained in Whiteside's files, they were destroyed before Plaintiffs named her in the SAC. Furthermore, Plaintiffs' counsel responded that most of the relevant documents are in the possession of third parties, such as banks and his clients.

**B. Accuracy of Rooney's representations to the court.**

Rooney now has clarified that his prior representation that "Whiteside could not be found for the majority of the case despite all good faith efforts by counsel to do so," was referring only to *his* efforts after taking the case over from Norman. Doc. No. 191. (The undersigned notes that counsel nonetheless waited two months after appearing in the matter before obtaining a summons for Whiteside.) Rooney also clarified that his prior representation that Whiteside had moved "several times" during the pendency of the action was based on (1) the fact that he attempted to serve her at addresses where she did not live, and (2) the information he and/or the process server obtained from a skip trace report. *Id.* These representations were not made on information and

belief. Plaintiffs' counsel subsequently explained why he did not use this qualifier in his declarations. Doc. No. 191, ¶ 5.

The court finds that the representations made by Rooney, which the district court relied upon in discharging its order to show case, are contradicted by the evidence. There simply is no evidence that Whiteside "could not be found for the majority of the case" and moved "several times." Whiteside has resided at the Stearns Drive address in Los Angeles since December 2006. Indeed, the skip trace report Plaintiffs ordered revealed Whiteside lived at that address in December 2010. Plaintiffs' counsel served her in person at that address in January 2011 with the superseded complaint. A process server spoke to Whiteside's husband at that address in November 2011; her husband confirmed she still lived there, but was out of town. Plaintiffs did not attempt to serve Whiteside again with any documents until September 2012, when Plaintiffs attempted to serve Whiteside with a copy of the summons and operative complaint. It is at this point that Plaintiffs determined, based on the conclusory certificate of *non estes* provided by their process server, that Whiteside no longer lived at Stearns Drive. In a further declaration provided to the court for the first time in December 2013, a process server declared that a blond woman matching the physical description of Whiteside answered the door at the Stearns Drive address in October 2012 and stated Whiteside did not live there. Doc. No. 191, Ex. A. It is Plaintiffs' contention that this blond woman was Whiteside, and that Whiteside was evading service. Plaintiffs have not introduced any admissible evidence to support their insinuations.[3]

---

[3] Rooney also clarified that his representation that Whiteside knew about the claims against her and had no intention to defend the lawsuit was based on (1) the fact that Whiteside ignored a courtesy notice of default he sent her warning her he would take her default if she did not respond to the complaint; (2) the fact Rooney informally inquired at her deposition whether she was planning to appear and defend; and (3) the fact Whiteside's brother (John), told Rooney that "to his knowledge" Whiteside was not planning to defend. *Id*. The basis for this representation also appears to be weak. First, Whiteside strenuously denies receiving the courtesy notice of default. Second, for the reasons described above, the court finds that an unrepresented, lay-person, may not have understood based on the deposition transcript that she was a defendant in this action. Third, John Whiteside's alleged representation to Rooney that "to his knowledge" Whiteside was not planning to defend includes several layers of hearsay. In any event, Rooney "submit[s] . . . that Ms. Whiteside's lack of intent to defend the case is a separate issue and not relevant to our inability to find and serve Ms. Whiteside." Doc. No. 191 at 3. While this may be the case, Whiteside's stated lack of intent to defend presented as a fact to the district court, and relied upon as a basis for discharging the order to show cause. *See* Doc. No. 106 ¶ 6; Doc. No. 109.

Although the court finds that Rooney's representations are contradicted by the evidence, the court is satisfied that any misrepresentations were not made intentionally by Rooney and were due to his phraseology rather than any intent to misrepresent the facts to the undersigned or the district court.

**C. Analysis.**

Federal Rule of Civil Procedure 4(m) imposes a 120-day deadline for serving a complaint. "If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." This limitation is intended to assure that plaintiffs will notify defendants promptly of a lawsuit, preventing possible prejudice resulting from delay, for example through the loss of evidence and the dimming of memories of percipient witnesses. *See* R. Weil, *et al.*, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 5:255 (2013). "Rule 4(m) requires a two-step analysis in deciding whether or not to extend the prescribed time period for the service of a complaint. First, upon a showing of good cause for the defective service, the court must extend the time period. Second, if there is no good cause, the court has the discretion to dismiss without prejudice or to extend the time period." *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001) (internal citations omitted). The Ninth Circuit has stated that the good cause analysis must be performed on a case-by-case basis, and that "a plaintiff may be required to show the following factors in order to bring the excuse to the level of good cause: '(a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed.'" *Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991) (citing *Hart v. United States*, 817 F.2d 78, 80-81 (9th Cir. 1987)). "[A]t a minimum, 'good cause' means excusable neglect." *Id*. In this district, "'Good cause' for delay longer than 120 days generally means that service had been attempted but not completed, that plaintiff was confused about the requirements of service, or that plaintiff was prevented from serving defendants by factors beyond his control." *Mateo v. the M/S Kiso*, 805 F. Supp. 792, 795 (N.D. Cal. 1992).

Based on the evidence above, the undersigned finds that there was not "good cause" for extending the Rule 4(m) deadline under *Boudette* or *Mateo*. First, service was not even attempted for the first year after Whiteside was named in the SAC, and there is no suggestion she had actual notice of the lawsuit until January 2011. Second, Plaintiffs do not contend they were confused by the requirements of service during this period. Third, Plaintiffs were not prevented from serving Whiteside by factors "beyond their control." Whiteside did not move "several times" during the course of this action and in fact could be found -- and was found -- at the same address throughout the proceedings. Plaintiffs' former counsel simply failed to serve Whiteside for a year, without reason, after naming her in the SAC.[4] Current counsel attempted to rectify this omission, but failed to serve Whiteside effectively until March 2013, more than three years after Whiteside was named as a defendant in this action (*see* Doc. No. 59). Rooney's subsequent attempts to serve Whiteside notwithstanding, Plaintiffs have offered no excuse for Norman's failure to even obtain a summons for Whiteside for almost a year. Fourth, although the parties dispute when Whiteside had actual notice that the action was pending against her (as opposed to against Countrywide), it is undisputed that Whiteside did not have notice of the action in any manner until more than three years after she completed her last transaction with Plaintiffs. Although by Whiteside's own representations, her brokerage files would have been destroyed before she was even named in the action, the ensuing additional delay in service likely prejudiced her ability to defend herself. Memories will have dimmed concerning the details of real estate transactions that occurred almost eight years ago. Finally, Plaintiffs argue that they will be prejudiced if the action is dismissed (even with leave to amend) because their claims against Whiteside will be time-barred. *See* Doc. No. 106 ¶ 8. While this factor typically weighs in plaintiffs' favor, it does not outweigh the other *Boudette* factors. In this instance, any prejudice to Plaintiffs was brought about by their inexcusable delay in serving Whiteside. Under similar circumstances, courts have dismissed cases

---

[4] Norman has declined to provide a declaration in support of her former clients in this matter. Doc. No. 191 ¶ 1. Regardless, Plaintiffs have produced no evidence that during the first year during which Whiteside was named as a defendant in this action, service was attempted but not completed, that Plaintiffs were confused about the requirements of service, or that Plaintiffs were prevented from serving Whiteside by factors beyond their control.

10

even when the statute of limitations has run on all claims.  *See, e.g., Ramos-Santoya v. The Insurance Co. of Penn*., 2009 U.S. Dist. LEXIS 32329, *11-*12 (E.D. Cal. Apr. 2, 2009) (dismissing case with prejudice under Rule 4(m) because all claims were barred by statute of limitations and "[p]rejudice to [the plaintiff] is of her own making"); *Norland v. Oregon*, 2009 U.S. Dist. LEXIS 93470, *18-*19 (D. Or. June 25, 2009) (dismissing claims under Rule 4(m) with prejudice because statute of limitations on claims had all run).

Plaintiffs have failed to establish that there was good cause for failing to serve Whiteside within 120 days of her being named as a defendant in this action.  Given the extent of the delay, the court further finds that it would be inappropriate for the district court to exercise its discretion to extend the Rule 4(m) deadline to March 2013, when Plaintiffs finally served Whiteside with a copy of the summons and operative complaint in this action.

## CONCLUSION

For the reasons stated above, the undersigned recommends that the district court rescind its order discharging the order to show cause, find there was no good cause for the delay, and order the case against Whiteside be dismissed under Rule 4(m).  Because the statute of limitations has run on Plaintiffs' claim, the undersigned recommends that the case be dismissed with prejudice, as any amendment would be futile.

Any party may file objections to this report and recommendation with the district court within fourteen (14) days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(B) & (C); Fed. R. Civ. Proc. 72(b); Civil L.R. 72-3.  Failure to file objections within the specified time may waive the right to appeal the court's order.

**IT IS SO ORDERED**.

Dated: February 20, 2014

_____
NANDOR J. VADAS
United States Magistrate Judge

11